[No. B146315. Second Dist., Div. Six. Dec. 3, 2001.]

CALIFORNIA AMPLIFIER, INC., et al., Plaintiffs and Appellants, v. RLI INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Gibson, Dunn & Crutcher, Daniel S. Floyd, William A. MacArthur and J. Warren Rissier for Plaintiffs and Appellants.

Morison-Knox Holden Melendez & Prough, William C. Morison-Knox, Michael D. Prough and John J. Rasmussen for Defendant and Respondent.

## OPINION

**PERREN, J.**—An insurer refused to indemnify its insured for the settlement of an action alleging that the insured engaged in the market manipulation of

stock in violation of Corporations Code sections 25400 and 25500.[1] We hold that liability under section 25500 requires a "wilful act" within the meaning of Insurance Code section 533, which precludes coverage under directors and officers liability insurance.

A class action was filed against appellants California Amplifier, Inc. (Cal Amp) and its officers, Ira Coron and David Nichols, seeking damages under section 25500 based on allegations that appellants made false and misleading statements to inflate the price of Cal Amp stock. Appellants filed this case for breach of contract and bad faith when respondent RLI Insurance Company (RLI) denied coverage.

The trial court granted RLI's motion for judgment on the pleadings, concluding that coverage was precluded by Insurance Code section 533. Appellants contend that coverage is permitted because Corporations Code section 25500 liability may be based on negligent conduct. We disagree and affirm.

### FACTS AND PROCEDURAL HISTORY

Appellants obtained a primary policy of directors and officers insurance from American Alliance Insurance Company. RLI issued a policy for excess coverage. The policies insured Cal Amp's directors and officers against liability for wrongful acts performed in their capacity as directors or officers, including violation of state laws concerning the offering, registration, sale or purchase of securities. The policies did not cover losses incurred by Cal Amp for its own liability. The primary policy also included an endorsement allocating liability between covered and noncovered claims and parties when a lawsuit is filed against both the company and its directors and officers. The RLI excess policy provides that it is subject to the same terms and conditions as the primary policy.

Appellants Cal Amp, Coron, and Nichols were all named as defendants in a class action for securities fraud in violation of sections 25400, subdivision (d), and 25500. The complaint alleges that appellants made false statements to the securities market exaggerating the future demand for Cal Amp's products as part of a scheme to raise the price of Cal Amp stock. The complaint alleges that plaintiff class members purchased Cal Amp stock at prices that were artificially inflated by the false statements. The class action was settled at the beginning of trial under terms which obligated Cal Amp to pay a substantial sum of money.

The primary insurer and another excess insurer paid a portion of the settlement, but RLI denied coverage and refused to contribute to the settlement. Appellants then filed this action against RLI alleging causes of action

---

[1] All statutory references are to the Corporations Code unless otherwise stated.

for breach of its policy, bad faith in refusing to respond to Cal Amp's demand for payment, and unfair business practices arising out of the same conduct.

RLI moved for judgment on the pleadings, arguing that the securities fraud alleged in the class action was uninsurable under Insurance Code section 533 and, alternatively, that the policy endorsement required that the entire settlement amount be allocated to Cal Amp, which was not an insured. The trial court granted the motion basing its ruling on Insurance Code section 533. It did not address the policy endorsement issue.

## DISCUSSION

### *Section 25500 Liability Requires Knowing and Intentional Conduct*

A motion for judgment on the pleadings tests the sufficiency of the complaint. As with a demurrer, we give the complaint a reasonable interpretation and accept all allegations of material fact as true. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) The judgment must be affirmed if any basis for the motion has merit and shows that plaintiffs cannot state a cause of action. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Shin v. Kong* (2000) 80 Cal.App.4th 498, 502 [95 Cal.Rptr.2d 304].) We independently review the trial court's ruling. (*Smiley, supra,* at p. 146.)

Cal Amp contends that the trial court erred by finding that liability under Corporations Code sections 25400, subdivision (d) and 25500 requires an uninsurable "wilful act" under Insurance Code section 533. Cal Amp argues that, since Corporations Code section 25400, subdivision (d), may be violated by negligent as well as intentional conduct, application of Insurance Code section 533 cannot be determined on the basis of the pleadings.[2] We disagree. Since a defendant must knowingly and intentionally make a false or misleading statement to be liable under Corporations Code section 25500, coverage is precluded by Insurance Code section 533 as a matter of law.

### 1. *Fraudulent and Prohibited Practices Under Corporate Securities Law*

Sections 25400 and 25500 are part of the Corporate Securities Law of 1968 (§ 25000 et seq.) (Act). We construe those statutes according to their

---

[2]Insurance Code section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

purpose and by harmonizing them with related sections of the Act to the extent possible. *(People v. Simon* (1995) 9 Cal.4th 493, 514 [37 Cal.Rptr.2d 278, 886 P.2d 1271]; *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268 [284 Cal.Rptr. 718, 814 P.2d 704].)

■ The Act includes three sections that create fraudulent and prohibited practices in the purchase and sale of securities. (§§ 25400-25402.) Section 25400 prohibits false and misleading statements designed to manipulate the securities markets.[3] *(Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1049 [80 Cal.Rptr.2d 828, 968 P.2d 539] *(Diamond Multimedia*).) "Market manipulation," essentially a term of art, covers fraudulent practices such as wash sales, matched orders, and rigged prices, that are intended to mislead investors by artificially creating market activity in a security. *(Id.* at p. 1040, fn. 2.) Section 25401 is a broader statute that prohibits misrepresentations in connection with the purchase or sale of

---

[3]Section 25400 makes it unlawful for any person:

"(a) For the purpose of creating a false or misleading appearance of active trading in any security or a false or misleading appearance with respect to the market for any security, (1) to effect any transaction in a security which involves no change in the beneficial ownership thereof, or (2) to enter an order or orders for the purchase of any security with the knowledge that an order or orders of substantially the same size, at substantially the same time and at substantially the same price, for the sale of any such security, has been or will be entered by or for the same or different parties, or (3) to enter an order or orders for the sale of any security with the knowledge that an order or orders of substantially the same size, at substantially the same time and at substantially the same price, for the purchase of any such security, has been or will be entered by or for the same or different parties.

"(b) To effect, alone or with one or more other persons, a series of transactions in any security creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

"(c) If such person is a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to induce the purchase or sale of any security by the circulation or dissemination of information to the effect that the price of any such security will or is likely to rise or fall because of market operations of any one or more persons conducted for the purpose of raising or depressing the price of such security.

"(d) If such person is a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and which he knew or had reasonable ground to believe was so false or misleading.

"(e) For a consideration, received directly or indirectly from a broker-dealer or other person selling or offering for sale or purchasing or offering to purchase the security, to induce the purchase or sale of any security by the circulation or dissemination of information to the effect that the price of such security will or is likely to rise or fall because of the market operations of any one or more persons conducted for the purpose of raising or depressing the price of such security."

securities in general. Section 25402 prohibits insider trading. These three sections are penal in nature. A violation could result in imprisonment for five years and a fine of up to $10 million. (§ 25540, subd. (b).)

Each of these three fraudulent practices sections has a corresponding section which establishes a private remedy for damages. (§§ 25500-25502.) The purpose of the Act in this regard is to create statutory liability that eliminates some of the elements of common law fraud, but balances this expansion of liability by placing other restrictions on recovery. (*Boam v. Trident Financial Corp.* (1992) 6 Cal.App.4th 738, 743-744 [8 Cal.Rptr.2d 177]; *Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 711-712 [136 Cal.Rptr. 871].) Section 25500 creates the private remedy for violations of section 25400 and extends liability to all persons affected by market manipulation without requiring reliance or privity. But, section 25500 is limited to intentional misrepresentations. (See *Bowden, supra,* at pp. 714-715.) Sections 25501 and 25502 extend liability to some negligent conduct, but retain the privity requirement from common law fraud.

### 2. *Section 25400, Subdivision (d)*

 Section 25400, subdivision (d), makes it unlawful for any person "selling or offering for sale or purchasing or offering to purchase the security, to make, for the purpose of inducing the purchase or sale of such security by others, any statement which was, at the time and in the light of the circumstances under which it was made, false or misleading . . . and which he knew or had reasonable ground to believe was so false or misleading." Enforcement of section 25400 is limited to administrative proceedings initiated by the Department of Corporations. (§§ 25530, 25532, 25535.)

Appellants contend that, by prohibiting statements that a person "had reasonable ground to believe" were false or misleading, section 25400, subdivision (d) can be violated by negligent conduct. We agree that a "reasonable ground to believe" a statement is false creates a negligence-based standard, but it is a standard that is not satisfied by ordinary negligence. It requires a higher level of culpability than common law negligent misrepresentation, which is satisfied if the defendant has no reason to believe a statement is true. (*Home Budget Loans, Inc. v. Jacoby & Meyers Law Offices* (1989) 207 Cal.App.3d 1277, 1285 [255 Cal.Rptr. 483].)

The required level of culpability for a section 25400, subdivision (d) violation is the equivalent of recklessness.  Recklessness involves more than inadvertence or incompetence. It entails a " 'conscious choice of a course of action . . . with knowledge of the serious danger to others

involved in it.' " (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31-32 [82 Cal.Rptr.2d 610, 971 P.2d 986].) In the context of securities fraud, recklessness exists when the danger of misleading buyers or sellers is so obvious that the defendant must have been aware of it. (*Hollinger v. Titan Capital Corp.* (9th Cir. 1990) 914 F.2d 1564, 1569.) ▉ Similarly, section 25400, subdivision (d) requires a person to make the statement despite having a belief that it may be false or misleading.

Moreover, knowledge or a reasonable ground to believe a statement is false or misleading is only one necessary element of a section 25400, subdivision (d) violation. The statement also must be made "for the purpose of inducing the purchase or sale of" a security by another person. (§ 25400, subd. (d).) A person must have a specific intent to affect the price of a security in order to induce its purchase or sale. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 173 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

The requirement of a specific intent to affect the price and induce a purchase or sale raises the level of scienter required for a section 25400, subdivision (d) violation. Recklessness satisfies one element of the statute, but deliberate intent is required to satisfy another element. As a result, a violation may be based on negligent (reckless) conduct in part, but not on negligent conduct alone.

We have found no case law which addresses the required level of scienter for a section 25400, subdivision (d) violation when one element of the violation can be established through negligent (reckless) conduct and one element requires intent. A leading treatise, however, takes the position that intentional conduct is required for a violation. (1 Marsh & Volk, Practice Under the Cal. Securities Laws (2001) § 14.05[3][b], pp. 14-52 to 14-53 (Marsh & Volk).)

According to Marsh & Volk, the " 'for the purpose' of inducing" language in section 25400, subdivision (d), requires that "the defendant knew what he or she was doing and did it intentionally." (1 Marsh & Volk, *supra,* § 14.05[3][b], pp. 14-52 to 14-53.) In reaching this conclusion, Marsh & Volk emphasizes that liability extends to everyone whose market trades are affected by the market manipulation. "In view of this potentially enormous and virtually unlimited liability, the intention of the defendant to affect the market by inducing the purchase or sale of the security by others was a necessary qualification of the defendant's liability." (1 Marsh & Volk, *supra,* § 14.05[2][e], p. 14-50; see *Diamond Multimedia, supra,* 19 Cal.4th at

p. 1056.) It is reasonable "to insist that the plaintiff prove that the defendant did something wrong." (1 Marsh & Volk, *supra*, at p. 14-50.)

### 3. *Section 25500*

Even if a negligence-based standard of recklessness were sufficient for a section 25400, subdivision (d) violation, the private cause of action for damages alleged in the underlying class action is governed by section 25500. Section 25500 imposes conditions for the recovery of damages, which are not included in section 25400, subdivision (d), and which make it clear that liability requires a knowingly false statement made with the deliberate intent to manipulate the price of a security.

Section 25500 provides that "[a]ny person who willfully participates in any act or transaction in violation of Section 25400 shall be liable to any other person who purchases or sells any security at a price which was affected by such act or transaction for the damages sustained by the latter as a result of such act or transaction." The key to section 25500 is the clause limiting liability to a person who "willfully participates in any act or transaction in violation of Section 25400." There are two areas of contention that must be resolved in order to construe this clause.

First, appellants and RLI dispute the meaning of the phrase "any act or transaction." According to appellants, the act or transaction referred to in section 25500 may constitute lawful conduct in general, provided that it includes a violation of section 25400, subdivision (d) as one of its parts. Appellants assert that an act or transaction fits the section 25500 requirement if it "gives rise" to a section 25400 violation.

We reject this interpretation, which incorrectly separates the "act or transaction" from the "violation of Section 25400." We conclude that the "act or transaction" referred to in section 25500 is the violation of section 25400 itself. To be liable under section 25500, a person must participate in market manipulation that violates section 25400. When, as here, section 25400, subdivision (d) is involved, section 25500 liability requires a person to make a false or misleading statement for the purpose of inducing the purchase or sale of stock.

As appellants concede, the phrase "in violation of Section 25400" modifies the verb "participates," not the phrase "in any act or transaction." Therefore, as a matter of grammar, the person must participate in the section 25400 violation, not just participate in an act or transaction that includes a violation. In addition, section 25500 provides that the price of the security

must be "affected by *such* act or transaction" in order for there to be liability. (Italics added.) Since only the false or misleading statement can affect the price of the security, "such act or transaction" must be interpreted as referring to the false or misleading statement itself.

The more difficult question in construing section 25500 concerns the meaning of its "willfully participates" requirement. Only a person who "willfully participates" in the act or transaction that violates section 25400, subdivision (d) can be liable for damages. Appellants argue that, since the adverb "willfully" modifies the verb "participates" and not the phrase "in violation of Section 25400," the statute should be read as requiring *willful* participation in a violation of section 25400, and not *willful* participation in a *willful* violation of section 25400.

We agree that the word "willfully" appears only once in section 25500. But, we can discern no material difference between willfully participating in a violation of section 25400, and willfully participating in a willful violation of section 25400.

We conclude that the purpose and intent of the willful participation requirement is to clarify and underscore the high level of scienter required for a violation of section 25500. The most reasonable interpretation of the phrase "willfully participates" is to limit section 25500 liability to situations where there is an intent to defraud through a knowingly false statement. Only persons who willfully, not merely recklessly, violate section 25400, subdivision (d) can be liable for damages.

This construction gives substantive meaning to the language of section 25500 and acknowledges that the language imposes conditions on liability. If a violation of section 25400 were all that was required for section 25500 liability, the Legislature would have said so. The Legislature would not have included language of limitation in section 25500 but, instead, would simply have provided that injured parties could recover damages caused by a violation of section 25400.

We reject appellants' contention that the "willfully participates" requirement in section 25500 imposes liability on two classes of persons: people who personally violate section 25400 and people who "willfully participate" in an act or transaction that gives rise to a section 25400 violation. This interpretation deprives section 25500 of substantive significance and leaves section 25400 to determine the scope of the private remedy for damages. It also fails to adequately account for the section 25500 requirement of *willful* participation.

If there is section 25500 liability on the part of all persons who willfully participate in a transaction that includes a section 25400, subdivision (d) violation, liability would extend far beyond the reach of section 25400, subdivision (d). An entire class of persons would be liable under section 25500, but not under section 25400, subdivision (d). For example, under appellants' view, a person who willfully—but lawfully—participates in an act or transaction that includes a false or misleading statement by another person might have liability. Appellants do not acknowledge that section 25500 liability is that far-reaching, but they also fail to demonstrate how their interpretation would limit liability in any manner.

Appellants' interpretation also ignores the enforcement scheme of the Act as it applies to aiders and abettors. Some sections of the Act provide that aiders and abettors have liability. For example, section 25504 imposes liability on a person who "materially aids" an act or transaction that violates section 25501 or 25503, and section 25504.1 imposes liability on persons who "materially assist" certain other violations. But, there is no such language in section 25400 or 25500. To impose liability on persons who do not directly participate in a section 25400 violation would be contrary to the legislative decision to exclude aiders and abettors from section 25500 liability. (See *Reiger v. Altris Software, Inc.* (S.D.Cal., Apr. 30, 1999, No. 98-CV-528 TW JFS) 1999 WL 540893; *Hudson v. Capital Management Intern., Inc.* (N.D.Cal., Aug. 24, 1982, No. C-81-1737 MHP) 1982 WL 1385.)

In addition, section 25400 is included in the "Fraudulent and Prohibited Practices" part of the Act, whereas section 25500, concerning damages for violation of section 25400, is in the "Enforcement" part. This arrangement is inconsistent with the argument that civil liability for damages may be based on conduct which does not, in itself, also violate section 25400. In fact, section 25510 provides that, "[e]xcept as explicitly provided in this chapter, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this law . . . ."

Moreover, although limited, consideration of these issues by courts and commentators supports a restriction on section 25500 liability to persons who were aware of the falsity of their statements and engaged in willful and intentional wrongdoing.

First, Marsh & Volk states that section 25500 requires that "the defendant intentionally engage in conduct prohibited by the provisions of [section 25400]. A person who made a statement which he or she did not know was

false or misleading could not be held liable under these sections." (1 Marsh & Volk, *supra*, § 14.05[3][a], p. 14-52.) While section 25400, subdivision (d) "requires only that the defendant know or have reasonable ground to believe that the statement is false or misleading, this prohibition in itself is not a sufficient basis to establish civil liability without also complying with the requirements of [Corporations Code section 25500.] A negligent misstatement might be the basis for an injunctive action by the Commissioner under [Corporations Code section 25530,] but it would not be possible to establish that a person 'willfully' participated in a violation of [Corporations Code section 25400] merely by establishing that he had made a negligent misstatement." (1 Marsh & Volk, *supra*, at p. 14-52, fn. omitted.)

Second, the California Supreme Court has also given some indication that it has adopted the position taken by Marsh & Volk. (*Diamond Multimedia*, *supra*, 19 Cal.4th at pp. 1048, 1056, 1058.) *Diamond Multimedia* describes the private action for damages under sections 25400 and 25500 as requiring a *knowingly* false or misleading statement. The court states that section 25400, subdivision (d), "makes it unlawful in California to knowingly make false or misleading statements for the purpose of inducing the purchase or sale of stock" either in California or elsewhere. (*Diamond Multimedia*, *supra*, at p. 1048.) The court also states that civil liability attaches only if a person omits a material fact for the purpose of inducing the sale or purchase of the stock with "knowledge" that the omission was false or misleading. (*Id.*, at p. 1048, fn. 13.)

In particular, the *Diamond Multimedia* court discussed a recent amendment to the federal securities law, which provides a "safe harbor" from liability for statements that predict future events. (15 U.S.C. § 78u-5.) The court noted that, since the safe harbor provision did not immunize forward-looking statements when there is actual knowledge of falsity, liability under section 25500 does not conflict with federal law. (*Diamond Multimedia*, *supra*, 19 Cal.4th at p. 1058.)

Since the issue decided in *Diamond Multimedia* concerned whether an out-of-state purchaser or seller could bring an action in California under section 25500, the court was not required to decide whether section 25500 liability could be based on less than knowing and intentional wrongdoing. ▮ Nevertheless, legal pronouncements by the Supreme Court are highly probative and, generally speaking, should be followed even if dictum. *Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].)

▮ Third, Corporations Code sections 25400 and 25500 are patterned after and virtually identical to section 9, subdivisions (a) and (e), of the

Securities Exchange Act of 1934 (15 U.S.C. § 78i (SEA)). ■ California courts may look to federal statutes for guidance in interpreting a closely analogous state statute. (See *Keating v. Superior Court* (1982) 31 Cal.3d 584, 598 [183 Cal.Rptr. 360, 645 P.2d 1192], overruled on other grounds in *Southland Corp. v. Keating* (1984) 465 U.S. 1 [104 S.Ct. 852, 79 L.Ed.2d 1].)

■ Section 9, subdivision (a)(4) of the SEA makes it unlawful for "a dealer or broker, or the person selling or offering for sale or purchasing or offering to purchase the security . . . to make, . . . for the purpose of inducing the purchase or sale of such security . . . any statement which was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, and which he knew or had reasonable ground to believe was so false or misleading." (15 U.S.C. § 78i(a)(4).) Section 9, subdivision (e) of the SEA provides that "[a]ny person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction . . . ." (15 U.S.C. § 78i(e).)

As with Corporations Code section 25500, there has been little judicial interpretation of section 9, subdivision (e) of the SEA. However, the Fifth Circuit Court of Appeals has stated, in dictum, that there is no liability for false or misleading statements which are made recklessly. Liability extends only to a statement made willfully and with knowledge or belief that it is false or misleading. (See *Chemetron Corp. v. Business Funds, Inc.* (5th Cir. 1982) 682 F.2d 1149, 1162, vacated on other grounds in 460 U.S. 1007 [103 S.Ct. 1245, 75 L.Ed.2d 476].)

In *Chemetron*, the court was concerned with whether the broader Securities and Exchange Commission rule 10b-5 (17 C.F.R. § 240.10b-5) remedy was available for activities covered by the more restrictive remedy set forth in section 9, subdivision (e) of the SEA. Citing legislative history, the court stated that, while recklessness was sufficient scienter for a rule 10b-5 action, recklessness is insufficient for a private cause of action under section 9, subdivision (e). (*Chemetron Corp. v. Business Funds, Inc., supra,* 682 F.2d at p. 1162.)

The court noted that section 9, subdivision (a)(4) of the SEA covers statements made where the person " 'knew or had reasonable ground to believe' " they were false or misleading, and that section 9, subdivision (e) of the SEA applies to any person who "willfully participates in any act or transaction in violation of subsection (a)." (*Chemetron Corp. v. Business Funds, Inc., supra,* 682 F.2d at pp. 1161-1162, fn. 18.) The court stated that

the interplay between these statutes provides at most two standards for actionable behavior. "The first, a statement or omission *known* to be false or misleading and *willfully* made, clearly constitutes scienter. The second, a statement or omission *believed* to be false or misleading at the time and under the circumstances made, yet *willfully* made, also constitutes scienter." (*Ibid.*; see also *In re Activision Securities Litigation* (N.D.Cal. 1985) 621 F.Supp. 415, 426-427 [Corp. Code, § 25500 creates civil liability for *willful* violations of § 25400].)

*Insurance Code Section 533 Precludes Coverage of Corporations Code Section 25500 Liability*

Appellants contend that, even if liability under Corporations Code section 25500 is limited to a willful violation of Corporations Code section 25400, insurance coverage is permitted by Insurance Code section 533. We do not quarrel with appellants' assertion that the concept of willfulness cannot be captured in a single formula and that, in certain situations, willful conduct may not qualify as a "wilful act" within the meaning of Insurance Code section 533. (See *Kwan v. Mercedes-Benz of North America, Inc.* (1994) 23 Cal.App.4th 174, 182-183 [28 Cal.Rptr.2d 371].) However, we reject appellants' contention that this case involves such a situation. Here, the willful conduct required for Corporations Code section 25500 liability must also be knowing and deliberate and, therefore, necessarily constitute a "wilful act" under Insurance Code section 533.

■ Insurance Code section 533 embodies a public policy to discourage willful wrongdoing. (*J.C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1020 [278 Cal.Rptr. 64, 804 P.2d 689].) Liability arising from intentional and inherently or predictably harmful conduct cannot be covered by liability insurance. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 500-502 [78 Cal.Rptr.2d 142].) But, there may be coverage for negligence, gross negligence and recklessness. (*J.C. Penney, supra,* at p. 1020; *Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 740-741 [15 Cal.Rptr.2d 815] (*Shell*).) Therefore, there may be coverage for an accident caused by drunk driving because drunk driving is considered reckless behavior. (*Interinsurance Exchange v. Flores* (1996) 45 Cal.App.4th 661, 672 [53 Cal.Rptr.2d 18].)

Insurance Code section 533 cases recognize that the line between reckless conduct and intentional and predictably harmful conduct is difficult to draw. (*Shell, supra,* 12 Cal.App.4th at p. 742; *Mez Industries, Inc. v. Pacific Nat. Ins. Co.* (1999) 76 Cal.App.4th 856, 875-876 [90 Cal.Rptr.2d 721].) Nevertheless, a "wilful act" under Insurance Code section 533 has been defined as

"an act deliberately done for the express purpose of causing damage or intentionally performed with knowledge that damage is highly probable or substantially certain to result." (*Shell, supra*, at p. 742; *Mez Industries, Inc., supra*, at pp. 875-876.) A "wilful act" includes a "deliberate, liability-producing act that the individual, before acting, expected to cause harm. . . . Therefore, section 533 precludes indemnification for liability arising from deliberate conduct that the insured expected or intended to cause damage." (*Shell, supra*, at p. 743.)

As we have concluded, section 25500 liability requires more than recklessness. The false or misleading statement may be made recklessly rather than with actual knowledge of its falsity. However, the conduct involved as a whole constitutes intentional and deliberate wrongdoing because the purpose of the false statement must be specifically intended with full knowledge of the likelihood of damage. There must be a knowing and purposeful act that is intended to cause damage by artificially altering the price of a security in order to induce a sale or purchase. Damage from the manipulation of the security is expected and "highly probable or substantially certain to result." (*Shell, supra*, 12 Cal.App.4th at p. 742; *Mez Industries, Inc. v. Pacific Nat. Ins. Co., supra,* 76 Cal.App.4th at pp. 875-876.) In fact, since the act is the manipulation of the stock price, it can be said that the "harm is inherent in the act itself." (*J.C. Penney Casualty Ins. Co. v. M.K., supra,* 52 Cal.3d at p. 1025.)

We have found no case law, and the parties cite none, that applies Insurance Code section 533 to Corporations Code section 25500 or 25400. However, the case of *Raychem Corp. v. Federal Ins. Co.* (N.D.Cal. 1994) 853 F.Supp. 1170, offers some insight. In *Raychem*, the federal district court addressed the question of whether Insurance Code section 533 prohibited coverage for damages under Securities and Exchange Commission rule 10b-5. The court concluded that, because recklessness was sufficient scienter for rule 10b-5 liability, Insurance Code section 533 did not preclude coverage. (*Raychem Corp.*, at p. 1180.) However, the court also stated that Insurance Code section 533 might preclude coverage if it could be established that the defendants made knowing misrepresentations. (*Raychem Corp.*, at p. 1180) Thus, *Raychem* provides inferential support for the conclusion that Insurance Code section 533 would preclude coverage of Corporations Code section 25500 liability which is necessarily based on a knowingly false statement.

### Judicial Estoppel

RLI contends that appellants are judicially estopped from even making the argument that section 25500 liability may be based on negligence. Judicial estoppel prevents a party from taking a position inconsistent

with a position previously asserted in the same or prior proceeding. (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 [75 Cal.Rptr.2d 178].) In a summary judgment motion in the underlying class action, appellants argued that liability under section 25500 requires a knowingly false statement. That argument is contrary to appellants' opposition to RLI's motion for judgment on the pleadings in this case.

The trial court refused to apply judicial estoppel because appellants' inconsistent positions involved a legal rather than a factual issue, and their position in the class action was unsuccessful. The record supports the trial court's decision.

Judicial estoppel may be applied in the trial court's discretion. (*International Engine Parts, Inc. v. Feddersen & Co., supra,* 64 Cal.App.4th at p. 350.) It is intended to protect the integrity of the judicial process by preventing litigants from playing "fast and loose" with the courts (*ibid.*) and, as such, it should be invoked only in egregious cases. (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1018 [79 Cal.Rptr.2d 544]; *International Engine Parts, supra,* at p. 354.) For these reasons, judicial estoppel is usually limited to cases where a party misrepresents or conceals material facts. (*Cloud, supra,* at p. 1019.) Appellants' changing legal arguments, which resulted from their different positions in the two lawsuits, is a reasonable litigation tactic and does not undermine the integrity of the judicial process.

*Allocation Endorsement*

RLI also contends that a policy endorsement allocating settlement costs provides an alternate basis for granting judgment on the pleadings. Directors and officers liability insurance provides coverage for wrongful acts committed by directors and officers, but no coverage for liability incurred by the company for its independent wrongdoing. Therefore, when both directors and officers and the company are named in the same lawsuit, it may be necessary to allocate settlement costs between covered and noncovered parties and claims. (See, e.g., *Nordstrom, Inc. v. Chubb & Son, Inc.* (9th Cir. 1995) 54 F.3d 1424, 1431-1436.)

Here, an endorsement to the primary policy purports to allocate the entire loss incurred in settling a securities claim to the company rather than to its directors and officers. Since the company itself is not insured, such an allocation would relieve RLI of any indemnity obligation. Appellants contend that the endorsement raises factual questions which cannot be resolved by judgment on the pleadings. RLI argues that the endorsement ends the case.

Since we have determined that the motion for judgment on the pleadings was properly granted for another reason, it is unnecessary to consider the allocation endorsement issue. (See *City of Alhambra v. P.J.B. Disposal Co.* (1998) 61 Cal.App.4th 136, 141, fn. 6 [71 Cal.Rptr.2d 364].) Also, we exercise judicial restraint and do not reach theories not relied upon by the trial court in granting the motion for judgment on the pleadings. (*Garver v. Brace* (1996) 47 Cal.App.4th 995, 998, 1003 [55 Cal.Rptr.2d 220].) Although briefed by the parties, the endorsement issue was not fully developed in the trial court and was not mentioned in oral argument or the trial court's written ruling.

The judgment is affirmed. Costs to respondent.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied January 2, 2002, and appellants' petition for review by the Supreme Court was denied February 13, 2002. Kennard, J., was of the opinion that the petition should be granted.