[No. H032007. Sixth Dist. June 25, 2008.]

NICOLAI SAFAI, a Minor, etc., et al., Plaintiffs and Respondents, v. MAX SAFAI, as Trustee, etc., et al., Defendants and Appellants.

**COUNSEL**

Hoge, Fenton, Jones & Appel and Stephanie O. Sparks for Defendants and Appellants.

Chiles and Prochnow and Kenneth H. Prochnow for Plaintiffs and Respondents.

**OPINION**

**PREMO, J.**—Nicolai Safai, by and through his guardian ad litem, Susanne Gahnstedt, brought a petition under Probate Code section 21320[1] for a judicial determination of whether proposed claims he intended to file would

---

[1] Probate Code section 21320 provides a "safe harbor" for a beneficiary of a will or trust that contains a no contest clause. Pursuant to the statute, the beneficiary may obtain an advance

violate the no contest clause contained in the Mansour Safai Trust dated January 24, 2006 (hereafter "the Trust"). Max Safai and Massoumeh Safai (hereafter "the Trustees") raised various objections to the petition and argued that the proposed claims would trigger the Trust's no contest clause. The trial court overruled certain of the objections raised by the Trustees and also found that the Trust's no contest clause was not violated by the proposed claims because Nicolai, as a minor, could not "voluntarily" participate in a trust contest. The Trustees appeal from the trial court's order. (Prob. Code, § 1304, subd. (d).) We affirm.

## I. *Factual and Procedural Background*

Mansour Safai[2] and Susanne Gahnstedt were married for approximately eight years, before their marriage dissolved in August 1999.[3] Their son, Nicolai Safai, was born in April 1991. Pursuant to the July 24, 1998 marital settlement agreement regarding property and spousal support, Mansour agreed to pay child support for Nicolai.

Mansour was diagnosed with a terminal illness in 2004, and on or about January 24, 2006, executed the Trust and a will. Mansour succumbed to his illness on February 9, 2006, and was survived by his brother, Max Safai; his sister, Massoumeh Safai; and his mother, Parvaneh Assefi.

The Trust named Max and Massoumeh as successor trustees and executors of his will. Pursuant to the terms of the Trust, after paying Mansour's debt and taxes, the Trustees are to divide the remaining trust estate into three separate trusts, as follows: (a) 40 percent into the Safai Family Trust for the benefit of Assefi and the Trustees; (b) 50 percent into the Nicolai Safai Trust

---

determination of whether a proposed action would constitute a contest without the risk that the request itself will be deemed a contest.

[2] Since several of the parties involved in this proceeding share the same last name, first names are used in the interests of clarity and brevity, not out of disrespect. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 280 [111 Cal.Rptr.2d 755].)

[3] According to a declaration Gahnstedt submitted in connection with the proceedings below, Mansour often told her that he believed his sister and his mother "had played a major role in the breakup of the marriage . . . [and] that his mother and sister, and his brother, all had pushed him to go to Court in 2003 and 2004 to pursue custody issues to force . . . Gahnstedt to compromise on financial issues." She also claims that, in the year prior to his death, Mansour's siblings "influence[d] and control[led] Mansour" by interfering in any attempt by Mansour and Gahnstedt to communicate with each other, whether by telephone, mail or fax. For their part, in connection with their objections to the petitions, the Trustees noted that Gahnstedt was pursuing her own substantial monetary claims against the Trust and was using a lien on Mansour's home as leverage for her creditor claim demands, thus implying that Gahnstedt is using Nicolai as a "cat's paw" in this trust contest. We reference these assertions not for their truth, about which we express no opinion, but simply to demonstrate the vitriolic atmosphere which pervades the underlying proceedings.

for the benefit of Nicolai; and (c) 10 percent into the Farnad Fakoor Trust.[4] To the extent that Assefi or the Trustees do not exercise their right to withdraw income from the Safai Family Trust, upon their death, their respective share of the Safai Family Trust will be added to the Nicolai Safai Trust.

Under the terms of the Nicolai Safai Trust, the Trustees are to pay to or apply as much of the net income and principal as they consider necessary for Nicolai's support, health, maintenance and education until Nicolai turns 30 years old or graduates from a four-year college or university and begins full-time employment, whichever occurs first. Upon graduating from a four-year college or university, Nicolai is to receive a lump-sum distribution of $50,000 from the Nicolai Safai Trust. Finally, the principal of the Nicolai Safai Trust is to be distributed to Nicolai in four increments, the timing of which depends on if and when he graduates from a four-year college or university. Regardless of whether or not he does so graduate, Nicolai is to receive his final distribution from the Nicolai Safai Trust at age 40.

Gahnstedt was expressly excluded and received nothing under either the Trust or the will. The Trust and the will both included no contest clauses, with the Trust's clause stating, as follows: "Any beneficiary who directly or indirectly voluntarily participates in any proceeding or action in which such person seeks to void, nullify, or set aside (1) any provision of this instrument; (2) any provision of the Settlor's will; or (3) any amendment of this instrument or codicil of the Settlor's will shall be considered to have predeceased the execution of this instrument without surviving descendants . . . . The provisions of this paragraph shall not apply to any disclaimer by any person of any benefit under this instrument. The Trustee is authorized to defend any contest or other attack of any nature on this instrument or any of its provisions."

On January 8, 2007, Gahnstedt filed an ex parte petition and application for appointment of guardian ad litem—probate, seeking to be appointed Nicolai's guardian ad litem in order to pursue claims on his behalf against the Trust. The ex parte application includes a preprinted section entitled "Consent of Minor 12 Years of Age or Older," which was completed as follows: "I, (name): Nicolai Safai, am (specify age): 15 years of age and hereby nominate (name): Susanne Gahnstedt, my mother[,] to be my guardian ad litem to represent my interests for the reasons set forth in items 5 and 6 of this petition."[5] This section was signed by Nicolai. The trial court approved the ex parte petition and appointed Gahnstedt as Nicolai's guardian ad litem on January 8, 2007.

---

[4] Farnad Fakoor was Mansour's fiancée at the time of his death, and is not a party to these proceedings.

[5] The underlined text was inserted into the blank spaces on the preprinted form.

On February 9, 2007, Nicolai, by and through his guardian ad litem, filed two petitions in the probate court: (1) a petition to determine validity and to set aside a declaration of trust on grounds of forgery, brought pursuant to Probate Code section 21306, subdivision (a) (hereafter "Forgery Petition"); and (2) a petition for declaratory relief that proposed claims will not violate a trust no contest clause, brought pursuant to Probate Code section 21320 (hereafter "Safe Harbor Petition"). In the Safe Harbor Petition, Nicolai sought a judicial declaration that the claims raised in his proposed petition, a copy of which was attached as exhibit A to the Safe Harbor Petition, to invalidate and set aside the Trust on grounds of undue influence, fraud, mistake and lack of capacity, would not violate the Trust's no contest clause.

On March 14, 2007, the Trustees filed their initial objections to both the Forgery Petition and the Safe Harbor Petition. The trial court set a hearing date of April 25, 2007, and established a briefing schedule for two separate events. The first event, listed as "Event A" on the trial court's March 21, 2007 minute order, was identified as "Petition for Declaratory Relief that Proposed Claims will not Violate Trust No-Contest Clause." The second event, listed as "Event B" on the minute order, was identified as "Petition of Susanne Gahnstedt to Determine Validity of and to set Aside Declaration of Trust on Grounds of Forgery."

On March 23, 2007, the Trustees filed supplemental objections to the petitions. Nicolai subsequently filed his response to the Trustees' objections, following which the Trustees filed their reply papers. At the April 25, 2007 hearing, the trial court took the matter[6] under submission.

On June 25, 2007, the trial court issued a written order finding that the "claims for relief set forth in the Proposed Petition would not constitute a violation by Nicolai of the . . . no-contest clause," because Nicolai was not " 'voluntarily participat[ing]' in the action."

The trial court overruled the Trustees' statute of limitations objection to the Safe Harbor Petition, on the grounds that the Safe Harbor Petition was not itself a trust contest, and therefore was not subject to the limitations period set forth in Probate Code section 16061.8. As to the proposed petition, attached as exhibit A to the Safe Harbor Petition, the trial court declined to address whether it would be barred by the statute of limitations, as it had not yet been filed with the court.

The Trustees timely appealed.

---

[6] As discussed below in part II.A., there was some dispute over exactly what the trial court took under submission at the hearing.

II. *Discussion*

 A. *The Trustees' objections to the Forgery Petition are not before this court*

The Trustees contend that the trial court erred in failing to rule on the merits of their statute of limitations objections to the Forgery Petition in its June 25, 2007 order. According to the Trustees, their objections to that petition were on calendar and were taken under submission at the April 25, 2007 hearing.

At the outset of the April 25, 2007 hearing, the following colloquy took place:

"THE COURT: Okay. Thank you. The Court is showing two events for this morning. One for declaratory relief, and the other for—to determine validity to set aside of [*sic*] trust on grounds of forgery. My recollection is that matter is going to be tried another day; is that right?

"MR. PROCHNOW [Nicolai's counsel]: That's correct, Your Honor.

"THE COURT: All right. We're only here on event A, the first one?

"MR. PROCHNOW: Yes. That's correct. I think, in fairness to Ms. Sparks [Trustees' counsel], she can speak for herself. I think the forgery petition is also under attack on grounds of timeliness and venue, if I'm not mistaken; correct?

"MS. SPARKS: Yes, Your Honor. My objections reach all three petitions.

"THE COURT: Okay. I'm only showing two petitions on calendar today however.

"MS. SPARKS: One petition is the [Safe Harbor Petition], and attaches the second—what I call the second trust contest. In other words, it's attached to Exhibit A. It is not actually, you know, hasn't been filed with the Court. But based on our appearance at the last hearing, Mr. Prochnow—I agreed with Mr. Prochnow that we could, if the Court does not want to reach the statute of limitations or venue issues, we would address the merits of the underlying Exhibit A."

The attorneys then presented their arguments regarding venue, the statute of limitations and the Trust's no contest clause. At the conclusion of the hearing, the following exchange took place:

"THE COURT: On the record. Do you want to do it again, please?

"MR. PROCHNOW: Sure. As we were arguing with Your Honor's initial remarks, it became clear to me that the [Forgery Petition] was not technically before the Court this morning. [¶] With respect to the timeliness claim and the venue claim, the arguments made here, the objection [*sic*] made and the responses that I have made, apply with equal force to the [Forgery Petition], as well as the [Safe Harbor Petition] and its proposed attachment. [¶] So what I would propose is that we stipulate that Your Honor's decision on the objections as to timeliness and venue apply with equal force to the [Forgery Petition] as it does to the [Safe Harbor Petition].

"THE COURT: Okay.

"MS. SPARKS: With one addition, Your Honor. My objections that I filed on March 14th reach whether or not that petition in and of itself is also a trust contest. I'm just reading through that petition. It has all of the same factual allegations about lack of capacity, undue influence, and fraud as the Exhibit A petition. So if Your Honor decides to reach whether or not it's a trust contest, then that issue is also on the table.

"MR. PROCHNOW: I'm sorry, Your Honor. I thought I was just making it easy. That issue has not been briefed. It's not before the Court properly. It's not what I meant to do. I'm sorry.

"THE COURT: It's okay.

"MR. PROCHNOW: It's just the issue of the objections. I'm just—the objection should stand as to the petition or not. We can proceed with what's left of it at some future date. That's the only stipulation I'd make.

"MS. SPARKS: I don't think we have an agreement then.

"THE COURT: That's fine.

"MS. SPARKS: The objections are . . .

"THE COURT: That's fine. Thank you."

Following that colloquy, the clerk, justifiably confused, asked, "So which one is under submission and what are we doing?" The trial court responded, "Well, the two events that are on calendar are under submission."

The transcript from the April 25, 2007 hearing reflects confusion among the parties and the trial court regarding exactly which matters were on calendar. At the outset of the hearing, the trial court indicated that only the objections to the Safe Harbor Petition would be addressed, but at the end of the hearing, it advised the clerk that the "*two* events that are on calendar are under submission." (Italics added.) The minute orders from the April 25, 2007 hearing again list two events, "Event A," identified as "Petition for Declaratory Relief that Proposed Claims will not Violate Trust No-Contest Clause" and "Event B," identified as "Petition of Susanne Gahnstedt to Determine Validity of and to set Aside Declaration of Trust on Grounds of Forgery." The April 25, 2007 minute orders also indicate that each of those events was argued and submitted. As a result, there is certainly some support in the record for the Trustees' position that their objections to both the Safe Harbor and Forgery Petitions were heard and submitted at the April 25, 2007 hearing.

However, at some point between the April 25, 2007 hearing and June 25, 2007, when the trial court issued its order, the trial court apparently came to the conclusion that the only matter that was under submission was the Trustees' objections to the Safe Harbor Petition, and that there was an "understanding" at the April 25, 2007 hearing that the objections to the Forgery Petition would be "tried at some future time." Consequently, the trial court made no ruling on the Trustees' objections to the Forgery Petition.

■ Assuming the trial court had a duty to rule on the objections to the Forgery Petition, as well as the objections to the Safe Harbor Petition, but failed to do so, the Trustees' remedy was by way of writ of mandamus. "The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it which are within its jurisdiction and that mandate may be used to compel the performance of this duty." (*Robinson v. Superior Court* (1950) 35 Cal.2d 379, 383 [218 P.2d 10].) The Trustees did not file a petition for writ of mandamus, electing instead to raise the issue by way of this appeal.

■ Though this court can, in "unusual circumstances," treat an appeal as a writ proceeding, there are no exigent circumstances to justify doing so in this case. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720] [discussing power to treat appeal as extraordinary writ petition].) The trial court here has not expressly indicated that it will never rule on the Trustees' objections to the Forgery Petition, but has merely postponed that ruling due to its belief, mistaken or not, that there was an "understanding" between the parties that those objections would be "tried at some future time." The Trustees have advanced no particular reason why this

court should rule on those objections in the first instance, when there is nothing to indicate that the trial court will not fulfill its duty at some future time.

Furthermore, "[b]efore seeking mandate in an appellate court to compel action by a trial court, a party should first request the lower court to act. If such request has not been made the writ ordinarily will not issue unless it appears that the demand would have been futile." (*Phelan v. Superior Court* (1950) 35 Cal.2d 363, 372 [217 P.2d 951].) The Trustees have made no showing that a request to the trial court to rule on their objections would have been futile.

Though the Trustees urge this court to "analyze the parties' respective arguments with regard to the proper application" of the objections to the Forgery Petition and "remand below for further proceedings in accordance with this Court's direction," we decline the invitation. (See *DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 196 [62 Cal.Rptr.3d 722] [where trial court has not reached an issue, not appellate court's function to render advisory opinion].)

B. *The trial court properly overruled the Trustees' statute of limitations objection to the Safe Harbor Petition and the proposed petition attached as an exhibit thereto*

"No person . . . may bring an *action to contest the trust* more than 120 days from the date the notification by the trustee is served upon him or her, or 60 days from the day on which a copy of the terms of the trust is mailed or personally delivered to him or her during that 120-day period, whichever is later." (Prob. Code, § 16061.8, italics added.) The trial court overruled the Trustees' statute of limitations objection to the Safe Harbor Petition on the grounds that the petition was not a "trust contest" within the meaning of Probate Code section 16061.8.

The trial court's ruling was correct. The Safe Harbor Petition was filed pursuant to Probate Code section 21320, which expressly allows a beneficiary to obtain an advance determination from the court of whether "a particular motion, petition, or other act" would constitute a contest within the terms of a no contest clause. (Prob. Code, § 21320, subd. (a).) It is not, in and of itself, an "action to contest the trust." Consequently, the limitations period set forth in Probate Code section 16061.8 does not apply.

As to the proposed petition, attached as exhibit A to the Safe Harbor Petition, the trial court properly deferred ruling on whether or not it would be barred by the statute of limitations since the document itself had not been

filed with the court. The only question before the trial court was whether or not the proposed petition would violate the Trust's no contest clause. The question of whether or not the proposed petition was barred by the applicable statute of limitations was premature, since that petition had not yet been filed.[7]

■ A controversy is not deemed ripe for adjudication unless it arises from a genuine present clash of interests and the operative facts are sufficiently definite to permit a particularistic determination rather than a broad pronouncement rooted in abstractions. (See *Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 169 [188 Cal.Rptr. 104, 655 P.2d 306].) " 'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.' " (*Id.* at p. 171, quoting *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].) Courts will not be drawn into disputes that depend for their immediacy on speculative future events. (*Pacific Legal Foundation v. California Coastal Com., supra,* at p. 173.)

### C. *The trial court properly granted declaratory relief regarding the proposed petition*

■ The interpretation of a trust instrument presents a question of law unless the interpretation turns upon the credibility of extrinsic evidence or a conflict in the evidence. (*Burch v. George* (1994) 7 Cal.4th 246, 254 [27 Cal.Rptr.2d 165, 866 P.2d 92] (*Burch*).) Although a no contest clause is strictly construed to avoid forfeiture, the trustor's intention controls. (*Id.* at p. 255; Prob. Code, § 21304.) In ascertaining the trustor's intent, we look first to the terms of the trust, though extrinsic evidence is admissible to ascertain the meaning of the trust and the intent of the trustor. (*Burch, supra,* at pp. 256, 258.) "The words of an instrument are to be given their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained." (Prob. Code, § 21122.) Furthermore, "[t]he words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative." (*Id.,* § 21120.)

It appears from the record that the trial court relied only upon the trust document in reaching its conclusions, and that the parties introduced no

---

[7] It appears that Nicolai did file a trust contest petition with the trial court, after the April 25, 2007 hearing and after the trial court issued its June 25, 2007 order. In connection with his respondent's brief, Nicolai filed a "separate appendix" which includes a trust contest petition bearing an endorsed-filed stamp date of July 7, 2007, and the Trustees' verified response to the trust contest petition. We make note of these documents only to indicate our awareness of them, not because we relied on them in reaching our decision.

extrinsic evidence relating to Mansour's intent with respect to the Trust's no contest clause. Therefore, we independently review that clause. (*Burch, supra,* 7 Cal.4th at p. 254.)

The salient question is whether or not Nicolai, who is appearing by and through his guardian ad litem, can be deemed to be "voluntarily" participating in the contest of the Trust. Our research has disclosed no reported decisions construing this language in a similar setting, i.e., where the trust contest is brought by the beneficiary's guardian ad litem.[8] To resolve this question, therefore, it is necessary to examine what it means to be represented by a guardian ad litem.

Minors lack capacity to sue in their own names. Instead, litigation must be conducted "by a guardian or conservator of the estate or by a guardian ad litem." (Code Civ. Proc., § 372, subd. (a); see also Fam. Code, § 6601 ["A minor may enforce the minor's rights by civil action or other legal proceedings in the same manner as an adult, except that a guardian must conduct the action or proceedings."].) In probate proceedings, a guardian ad litem may be appointed by the court "at any stage of a proceeding . . . to represent the interest of [a minor], if the court determines that representation of the interest otherwise would be inadequate." (Prob. Code, § 1003, subd. (a).) The guardian or guardian ad litem is not a party to the action; instead, he or she is a representative of record of a party who lacks capacity to sue. (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 964 [22 Cal.Rptr.2d 527].) "The guardian ad litem's powers include the right to compromise or settle the action [citation], to control the procedural steps incident to the conduct of the litigation [citation], and, with the approval of the court, to make stipulations or concessions that are binding on the minor, provided they are not prejudicial to the latter's interests." (*County of Los Angeles v. Superior Court* (2001) 91 Cal.App.4th 1303, 1311 [111 Cal.Rptr.2d 471].)

According to Black's Law Dictionary, "voluntarily" means "[i]ntentionally; without coercion." (Black's Law Dict. (8th ed. 2004) p. 1605, col. 2.) As discussed above, as a minor, Nicolai is incapable of initiating a trust contest or any other legal proceeding. The only way in which he can initiate, let alone participate in, such a proceeding is through a guardian ad litem. Since Nicolai could not, even if he wished to, bring a probate action contesting the Trust of his own volition, his participation in the Trust contest cannot be said to be voluntary.

Turning to the question of Mansour's intent, we think it unlikely that Mansour intended to disinherit his only son in the event that Nicolai

---

[8] The Trustee's citation to *Colburn v. Northern Trust Co.* (2007) 151 Cal.App.4th 439 [59 Cal.Rptr.3d 828] is inapposite. The no contest clause at issue in that case did not limit its application to beneficiaries who "voluntarily" contested the trust. (*Id.* at pp. 444–445.)

246

contested the Trust while still a minor. The Trustees claim that Mansour and Gahnstedt, after divorcing, "had a hostile relationship and continued litigating over the support, custody and visitation of their son Nicolai." While that may be true, it does not show that Mansour and Nicolai had a contentious relationship at all, and the Trustees advance no explanation as to why Mansour would have intended the no contest clause to apply to Nicolai, at least during his minority. If Mansour and Gahnstedt were continually at odds over Nicolai, as the Trustees assert, it seems improbable that Mansour would incorporate a clause into the Trust which would, if given effect, punish Nicolai for actions taken by Nicolai's mother.

D. *Nicolai's act of signing the "minor's consent" portion of the ex parte application for appointment of guardian ad litem does not equate to "voluntarily" participating in the Trust contest*

The Trustees contend that the "voluntariness" of Nicolai's participation in the Trust contest is demonstrated by the fact that he executed the form expressing his consent to having his mother appointed to be his guardian ad litem. The Trustees argue that this conduct by Nicolai amounts to a judicial estoppel.

 Judicial estoppel prevents a party from asserting a position in a judicial proceeding that is contrary to or inconsistent with a position asserted in a prior proceeding. The purpose is to protect the integrity of the judicial process. (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 [75 Cal.Rptr.2d 178].) The doctrine is commonly applied to bar a party from making a factual assertion in a legal proceeding that directly contradicts an assertion made in the same proceeding or a prior one. (*Ibid.*) "As the primary purpose of the doctrine of judicial estoppel is not to protect the litigants but to protect the integrity of the judiciary, the doctrine does not require reliance or prejudice before it may be invoked." (*Id.* at p. 351.) The doctrine applies when: " '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " (*Ibid.*, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) It should be invoked, however, only in egregious cases (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1018 [79 Cal.Rptr.2d 544]) where a party misrepresents or conceals material facts. (*California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102, 118 [113 Cal.Rptr.2d 915].)

Nicolai's written consent to the appointment of Gahnstedt as his guardian ad litem does not equate to his "voluntarily" participating in the Trust contest

within the meaning of the no contest clause. His signature on the ex parte petition does not change the fact that he was, at all relevant times, legally incapable of pursuing such a contest of his own volition. His signature, in and of itself, has no legal effect whatsoever. It is, at most, an acknowledgement of Nicolai's belief that his mother would act in his best interests, and was a factor for the trial court to consider in determining whether or not to appoint her as his guardian ad litem. It certainly does not amount to judicial estoppel.

III. *Disposition*

The probate court's order is affirmed.

Rushing, P. J., and Elia, J., concurred.