**AMERICAN HIGH–INCOME TRUST, et al., Plaintiffs,**

v.

**ALLIEDSIGNAL, et al., Defendants.**

No. 02CIV.2506(LTS)(JCF).

United States District Court,
S.D. New York.

Aug. 10, 2004.

Grant & Eisenhofer, P.A. by Stuart M. Grant, Esq., Denise T. DiPersio, Esq., Wilmington, DE, for Plaintiffs.

Willkie Farr & Gallagher by Kevin B. Clark, Esq., Washington, DC, for Defendants Johnnie Cordell Breed, Charles J. Speranzella, Jr., and the Estate of Allen K. Breed.

Kirkland & Ellis by Peter A. Bellacosa, Esq., New York City, for Defendant AlliedSignal.

Cadwalader, Wickersham & Taft by Gregory A. Markel, Esq., Nancy Ruskin, Esq., Ronit Setton, Esq., New York City, for Defendants NationsBanc Montgomery Securities LLC and Prudential Securities, Inc.

OPINION AND ORDER

SWAIN, District Judge.

Plaintiffs, which are four Massachusetts and two California business trusts and two Maryland corporations, assert claims in this action under Sections 11, 12(a)(2), and

15 of the Securities Act of 1933, Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, certain sections of the California Corporate Code, and for common law fraud, in connection with their purchase of bonds from Breed Technologies, Inc. ("Breed"). Except to the extent noted below, the Court has jurisdiction of this action pursuant to 15 U.S.C. §§ 77v and 78aa, and 28 U.S.C. §§ 1331 and 1367. Defendants move, respectively, for an order dismissing the Amended Complaint ("Complaint") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. The Court has considered thoroughly all submissions and argument in connection with the instant motions. For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

The following allegations are taken from the Complaint, statements or documents incorporated in the Complaint by reference, public disclosure documents filed with the SEC, and/or documents that Plaintiffs either possessed or knew about and upon which they relied in bringing this action. *See Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000). All of the allegations in the Complaint are taken as true for purposes of resolution of the instant motion practice.

Breed, a non-party to this action, "develops and manufactures components and systems for vehicle occupant safety for cars and trucks." (Compl.¶ 19.) In 1997, defendant AlliedSignal Inc. ("AlliedSignal") sold the assets of its Safety Restraints Systems Division ("SRS") to Breed for $710 million. (*Id.* ¶ 2.) Breed financed the SRS Acquisition through the sale of the bonds at issue (the "Bonds"). (*Id.* ¶ 3.) Defendants NationsBanc Montgomery Securities LLC ("NationsBanc") and Prudential Securities, Incorporated ("Prudential"), acted as the underwriters for the Bonds. (*Id.* ¶¶ 26–27). Plaintiffs purchased the Bonds through an investment manager, either Capital Research and Management Company ("CRMC") or Capital Guardian Trust Company ("CGTC"). *See id.* ¶¶ 11–18.

At the time of the SRS Acquisition, defendant Johnnie Cordell Breed was Breed's Chief Operating Officer, and defendant Charles J. Speranzella ("Speranzella") was Breed's Executive Vice President of Worldwide Operations and General Counsel. (*Id.* ¶ 29.) Allen K. Breed, Breed's founder, was chair or co-chair of Breed's Board of Directors until March 1998, and subsequently was chair emeritus.[1] (*Id.* ¶ 22.) Johnnie Cordell Breed, Speranzella, and Allen Breed are referred to collectively as the "Director Defendants."

Breed informed AlliedSignal that the acquisition would be financed through a private placement. AlliedSignal agreed to provide Breed with financial information about SRS and to give Breed the right to conduct due diligence on SRS for one month. (*Id.* ¶¶ 34–35.) During due diligence, AlliedSignal provided Breed's accountants, Ernst & Young, with materials that included SRS's earnings before interest, taxes and amortization and other adjustments ("EBITA") for the first half of 1997, and SRS's projected EBITA for 1997 and 1998. (*Id.* ¶ 39.) Plaintiffs allege that "Breed now claims, although Plaintiffs were never informed," that AlliedSignal hindered Breed's due diligence by withholding key documents and information, and by limiting access to certain operations and financial personnel. (*Id.* ¶ 41.)

---

**1.** Allen Breed died in December 1999. (*Id.* ¶ 22.) Speranzella and defendant Terry Cordell are the Co–Personal Representatives of Mr. Breed's estate.

The information that Plaintiffs allege AlliedSignal did not turn over included the margins on particular SRS contracts, which AlliedSignal represented it could not calculate. (*Id.*) Plaintiffs also allege that Breed now claims that Ernst & Young's due diligence revealed that AlliedSignal "had engaged in questionable accounting practices or made unsupportable assumptions," information that Plaintiffs did not learn prior to purchasing the Bonds. (*Id.* ¶ 42.)

The SRS Acquisition closed on October 30, 1997. (*Id.* ¶ 47.) Notwithstanding the difficulties Breed encountered during due diligence, the Director Defendants allowed AlliedSignal to keep the financial books and records for SRS until June 30, 1998. (*Id.* ¶ 48.) After AlliedSignal provided Breed with SRS's financial records in July 1998, Breed realized that it had been defrauded. Breed filed suit against AlliedSignal on August 2, 1999. (*Id.* ¶ 50.) Plaintiffs did not learn of the discovery difficulties or accounting problems until after Breed's complaint was filed. (*Id.*)

Breed issued the Bonds pursuant to an Offering Memorandum, dated April 20, 1998, created by Breed, the Director Defendants, NationsBanc and Prudential (the "Private Placement"). (*Id.* ¶¶ 51–52; "Offering Memorandum," Ex. 1 to Bellacosa Decl.) The Offering Memorandum contains financial data and projections of Breed that give effect to the SRS Acquisition and other transactions, including *pro forma* statements of earnings for the 12 months ended June 30, 1997, and December 31, 1997, and for the six months ended December 31, 1997. (Compl.¶¶ 54–55.)

Breed issued press releases and Form 10–Q's in February and March of 1998 that reported earnings and included information on the SRS division, but did not disclose that the financial books and records

of SRS were still being kept by AlliedSignal. (*Id.* ¶¶ 59–60.)

Breed marketed the Bond placement by leading a nationwide road show (the "Road Show") with Nationsbanc. (*Id.* ¶ 61.) On the Road Show, Speranzella met with CRMC and CGTC in Los Angeles on April 7, 1998. (*Id.* ¶ 62.) Speranzella did not disclose to CRMC/CGTC that AlliedSignal still maintained SRS's financial records, or "the existence of loss contracts." (*Id.* ¶¶ 63–64.) NationsBanc did not contradict Speranzella's statements. (*Id.* ¶ 66.)

After the Road Show, the NationsBanc analyst covering Breed provided CRMC/CGTC with a financial model of Breed prepared with financial data culled from SRS financial statements that AlliedSignal had given to Breed. (*Id.* ¶¶ 68–71.) NationsBanc did not disclose to CRMC/CGTC the due diligence difficulties experienced by Breed, or that the financial data underlying NationsBanc's Breed model derived from AlliedSignal. (*Id.* ¶ 69.)

Relying on the Road Show, the conversations with NationsBanc, and the Offering Memorandum, CRMC/CGTC purchased the Bonds for Plaintiffs. (*Id.* ¶ 72.)

Pursuant to a Registration Rights Agreement between Breed and NationsBanc and Prudential that is described in the Offering Memorandum, Breed agreed to file a registration statement (the "Registration Statement") with the SEC with respect to an offer to exchange the Bonds for registered notes (the "Exchange Offering"). (*Id.* ¶ 73.) On March 9, 1999, Breed filed the Registration Statement with the SEC, incorporating by reference previously filed financial statements that were prepared from AlliedSignal-provided data. (*Id.* ¶¶ 75, 77; "Registration Statement," Ex. 3 to Bellacosa Decl., at 7–8.) The Registration Statement does not incorporate the Offering Memorandum. *See* Registration Statement at 7–8. Johnnie

Cordell Breed and Speranzella signed the Registration Statement. (Compl.¶ 75.)

In its 10–K for the fiscal year ending June 30, 1998, filed September 28, 1998, Breed reported that, "[d]uring the quarter ended June 30, 1998, [Breed] recorded a $21.7 million special charge . . . relating to expected losses under 28 contracts . . . acquired in connection with the SRS Acquisition." (Ex. 2 to Bellacosa Reply Decl. at 19; Compl. ¶ 106.) In a press release accompanying Breed's 10–Q for the quarter ending March 31, 1999, both issued May 17, 1999, Breed reported a special charge of $135.2 million "relating to [Breed's] European seat belt operations . . . resulting in a $234.7 million or $6.37 per share net loss for the nine months ended March 31, 1999." ("Press Release," Ex. 8 to Bellacosa Decl.) The May 1999 10–Q explained that Breed had acquired the European seat belt businesses as part of the SRS Acquisition, and that the charge was necessary because those businesses "are performing materially worse than expected and have contracts to provide products at losses or marginal profits." ("May 1999 10–Q," Ex. 9 to Bellacosa Decl., at 11.)

Breed filed suit against AlliedSignal for fraud in August 1999. Plaintiffs commenced the instant action in the United States District Court for the District of Delaware on July 31, 2000.

## DISCUSSION

In evaluating a motion to dismiss, the Court is obliged to take as true the facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998). The complaint must not be dismissed unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Ganino v. Citizens Utilities Company,* 228 F.3d 154, 161 (2d Cir.2000). The Court may consider statements or documents incorporated in the complaint by reference, public disclosure documents filed with the SEC, and documents "that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000) (internal citations omitted).

*Plaintiffs' Claims Against Defendants NationsBanc and Prudential*

Plaintiffs assert claims against NationsBanc and Prudential under Sections 11 and 12(a)(2) of the Securities Act arising from allegedly misleading historical financial statements in the Offering Memorandum, Registration Statement and Prospectus, allegedly misleading oral statements regarding the historical financial statements of SRS, and omissions in the foregoing regarding Breed's due diligence difficulties with AlliedSignal of which NationsBanc and Prudential were or should have been aware, that called the SRS financial statements into doubt.

*Section 11 Claims*

Section 11 of the Securities Act provides, in part, that

> In case any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security . . . may, either at law or in equity, in any court of competent jurisdiction, sue . . . every underwriter with respect to such security.

15 U.S.C.A. § 77k (West 1997). The Securities Act defines an underwriter as

[A]ny person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; but such term shall not include a person whose interest is limited to a commission from an underwriter or dealer not in excess of the usual and customary distributors' or sellers' commission. As used in this paragraph, the term "issuer" shall include, in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer.

15 U.S.C.A. § 77b(11) (West 1997).

■ NationsBanc and Prudential argue that they are not subject to Section 11 liability in connection with the Registration Statement because they "made no purchases in the Exchange Offering, much less purchases with a view to distribution, nor did they offer or sell any security in connection with that offering or participate in the underwriting of that offering." (NationsBanc's Mem. in Supp. at 8–9.) Plaintiffs contend that the Private Placement and the Exchange Offering were an "integrated transaction," and thus that NationsBanc and Prudential's involvement with the Private Placement must be considered in determining whether Section 11 underwriter liability applies.

The process by which an issuer offers bonds through a private placement under Rule 144A of the Securities Act,[2] and sub-

sequently offers to exchange the Rule 144A notes for registered securities—an "Exxon Capital exchange offer"—is typical of high-yield debt issuance. (Compl. ¶ 51.) *Cf. In re Livent. Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 430–31 (S.D.N.Y.2001) (*"Livent I"*) (discussing private placement/exchange offering structure). The court in *Livent* I confronted the question of whether initial purchasers, such as NationsBanc and Prudential here. are subject to underwriter liability, and reasoned that

> To import underwriter liability for entities that serve as initial purchasers prior to an Exxon Capital Exchange would render Rule 144A ineffective for a very substantial number of securities transactions, and defeat the capital market financing objectives the Rule 144A exemption was designed to achieve, a fact which would undoubtedly have been known and addressed by the promulgators of Rule 144A if such a major exception was intended.

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d at 431–32. In light of this concern, the court concluded that section 11 liability for securities purchased pursuant to a registration statement "does not apply to initial purchasers of unregistered securities who were not directly involved in the preparation of the registration statement or in the subsequent exchange for registered securities of unregistered securities that the initial purchasers no longer held." *Id.* at 432. Relying on *Livent* I, the court in *In re Safety–Kleen Corp. Bondholders Litig.* dismissed Section 11 claims against initial purchaser defendants who had assisted in the private placement

---

**2.** Rule 144A(b) provides: "Any person, other than the issuer or a dealer, who offers or sells securities in compliance with the conditions set forth in paragraph (d) of this section shall be deemed not to be engaged in a distribution

of such securities and therefore not to be an underwriter of such securities within the meaning of sections 2(11) and 4(1) of the [Securities] Act". 17 C.F.R. § 230.144A(b).

of notes through an offering memorandum knowing that that memorandum "would be used for a subsequent registration." *In re Safety–Kleen Corp. Bondholders Litig.*, No. 3:00–1145–17 (D.S.C. Sept. 6, 2002) (Ex. A to Setton Supp. Decl.) at 4. Even if the private placement at issue contemplated a subsequent registered exchange, the *Safetv–Kleen* court observed, there were no allegations that the defendants had participated in the creation of the registration statement; consequently, the court found that the allegations were "insufficient to bring the [i]nitial [p]urchaser defendants within Section 11." *Id.*

The *Livent* I court did allow repleading as to one initial-purchaser defendant that the plaintiffs asserted had sold registered notes directly. *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d at 432. In *In re Livent, Inc. Noteholders Sec. Litig.*, 174 F.Supp.2d 144 (S.D.N.Y.2001) (*"Livent II"*), the court denied a motion to dismiss Section 11 claims against that defendant because the amended complaint alleged that plaintiffs had purchased notes from that defendant after they had been registered. *Id.* at 157.

Plaintiffs here do not allege that NationsBanc or Prudential were involved in the preparation of the Registration Statement, or that any Plaintiff purchased registered Bonds from NationsBanc or Prudential. As in *Safety–Kleen*, the alleged involvement of NationsBanc and Prudential with the Exchange Offering at most amounts to preparation of an offering memorandum that explicitly contemplated a later registration. As in *Livent* I, the fact that NationsBanc and Prudential were "heavily involved as initial purchasers who essentially orchestrated the subsequent sale of the unregistered securities ... does not make them liable as underwriters of the sale of the registered securities." *In re Livent. Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d at 431. Plaintiffs have already had the opportunity to replead their Section 11 claims with the benefit of having briefed Defendants' motion to dismiss the original complaint. Granting further leave to amend these claims would be futile.[3] Accordingly, Count I of the Complaint is dismissed with prejudice as against NationsBanc and Prudential.

*Section 12(a)(2) Claims*

■ Section 12(a)(2) provides that any person who "offers or sells a security ... by means of a prospectus or oral communication" that contains "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading" shall be liable "to the person purchasing such security from him." 15 U.S.C.A. § 77l(a)(2) (West Supp.2004). The Supreme Court has held that " 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder." *Gustafson v. Alloyd Company, Inc.*, 513 U.S. 561, 584, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995).

NationsBanc and Prudential assert that they are not liable under Section 12(a)(2) because they did not offer to sell any securities by means of a prospectus. They stress that there are no allegations that they were involved in the preparation of the Registration Statement, and that the Offering Memorandum pertained solely to the Private Placement, and thus is not a prospectus as defined in *Gustafson*. Plaintiffs again contend that the Private Placement and Exchange Offering should be considered as an integrated transaction,

**3.** The foregoing futility analysis applies to all of the claims dismissed by the Court except those dismissed for lack of subject matter jurisdiction.

and thus that the Offering Memorandum constitutes a prospectus.

Plaintiffs point to *AAL High Yield Bond Fund v. Ruttenberg,* No. 00–C–1404–S (N.D.Ala. Oct. 1, 2001) (Ex. 1 to Pls.' Compendium of Unreported Decisions) for the proposition that a document that purports to be a private placement memorandum may in fact be a prospectus. *Id.* at 15–16. The *AAL High Yield Bond Fund* court found that "[t]he line between public offerings and private placements is neither well-defined nor easily decipherable," and as such presents factual questions not resolvable on a motion to dismiss. *Id.* The Court declines to follow the *AAL High Yield Bond Fund* court's reasoning.

The Court finds Plaintiffs' argument that the Offering Memorandum constitutes a prospectus for the purposes of Section 12(a)(2) unavailing for two reasons. First, offerings under Rule 144A are by definition non-public, and offering memoranda distributed in connection with such offerings cannot give rise to Section 12(a)(2) liability. *See AIG Global Securities Lending Corp. v. Banc of America Securities LLC,* 254 F.Supp.2d 373, 389 (S.D.N.Y. 2003) (dismissing Section 12(a)(2) claims arising from sale of securities through Rule 144A offering); *Galmorgan Coal Corporation v. Ratner's Group PLC,* No. 93 Civ. 7581, 1995 WL 406167 (S.D.N.Y. July 10, 1995) (dismissing with prejudice Section 12(a)(2) claim alleging misrepresentations in private placement offering memorandum, in light of *Gustafson* ). Second, for the reasons noted in rejecting Plaintiffs' integration argument in connection with the Section 11 claim against Nations-Banc and Prudential, the Court refuses to deem the Private Placement and Exchange Offering as being "integrated" such that the Offering Memorandum should be considered a prospectus. Accordingly, Count

II is dismissed with prejudice as to NationsBanc and Prudential.

*Fraud Claims Against NationsBanc*

Plaintiffs assert claims of fraud under Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder, common law, and the California Corporations Code sections 25400 and 25500 against NationsBanc[4] based on allegedly misleading historical financial statements in the Offering Memorandum, Registration Statement and Prospectus, allegedly misleading oral statements regarding the historical financial statements of SRS, and omissions in the foregoing regarding Breed's due diligence difficulties with AlliedSignal. Plaintiffs allege that Nations-Banc was or should have been aware of the due diligence difficulties, and that those difficulties called the SRS financial statements into doubt.

■ To state a claim under Section 10(b) and Rule 10b–5, "a plaintiff must plead that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *Ganino v. Citizens Utilities Company,* 228 F.3d at 161. Plaintiffs' Rule 10b–5 claims are also subject to the pleading requirements of the PSLRA, which provides that,

In any private action arising under this chapter in which the plaintiff alleges that the defendant [made a material false statement or omitted a material fact], the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the com-

---

**4.** Plaintiffs assert only Securities Act claims · against Prudential. (Pl.'s Mem. in Opp. at 2.)

plaint shall state with particularity all facts on which that belief is formed. 15 U.S.C.A. § 78u–4(b)(1) (West 1997). Furthermore,

> In any [such private action] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind. the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C.A. § 78u–4(b)(2) (West 1997).

■ Prior to the enactment of the PSLRA, the pleading standard for scienter in the Second Circuit required that a plaintiff allege facts that give rise to a strong inference of fraudulent intent. *Novak v. Kasaks,* 216 F.3d 300, 307 (2d Cir.2000). The "strong inference" could be established by alleging facts that constituted strong circumstantial evidence of conscious misbehavior or recklessness, or alleging facts showing that defendants had both motive and opportunity to commit fraud. *Id.* In *Novak,* the Second Circuit held that the PSLRA, with the exception of the addition of the words "with particularity," adopted the Second Circuit's "strong inference" standard. *Id.* at 311. Examining pre-PSLRA caselaw for guidance as to how the "strong inference" standard may be met, the *Novak* court concluded that a strong inference of the required state of mind:

> [M]ay arise where the complaint sufficiently alleges that the defendants: (1) benefited in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements

were not accurate; or (4) failed to check information they had a duty to monitor. *Id.* (internal citations omitted). A showing of motive and opportunity still may satisfy the PSLRA standard, as long as the plaintiff has alleged facts showing the types of circumstances recognized as probative of a strong inference of scienter under Second Circuit law. *Rothman v. Gregor,* 220 F.3d at 90.

■ To state a claim of common law fraud under New York law,[5] a plaintiff must allege that: (1) the defendant made a material false representation, (2) with the intent to defraud the plaintiff, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995).

Subdivision (d) of Section 25400 of the California Corporations Code (the only subdivision pertinent to this action) "makes it unlawful in California for sellers or buyers of stock to make false or misleading statements of material facts for the purpose of inducing a sale or purchase." *Diamond Multimedia Systems, Inc. v. Superior Court,* 19 Cal.4th 1036, 80 Cal. Rptr.2d 828, 968 P.2d 539, 546 (1999). Section 25500 of that Code provides a private remedy against persons who willfully violate section 25400. *See* Cal. Corp.Code § 25500. Civil liability for violations of section 25400 "attach[es] only if a person omits a material fact for the purpose of inducing the sale or purchase of the stock with knowledge that the omission was false or misleading." *Id.* at 547 n. 13. *See also California Amplifier, Inc. v. RLI Insurance Co.,* 94 Cal.App.4th 102, 113 Cal. Rptr.2d 915, 923 (2001) (concluding that

---

**5.** Although the Complaint does not specify the governing state law, all parties analyze Plaintiffs' common law fraud claim under New York law.

section 25500 liability is limited "to situations where there is an intent to defraud through a knowingly false statement").

■ Plaintiffs' common law fraud and California Corporations Code fraud claims must meet the pleading requirements of Rule 9(b), which requires that the circumstances constituting the alleged fraud be stated with particularity. "A complaint making such allegations must (1) specify the statements the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak*, 216 F.3d at 306 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)). Furthermore, Plaintiffs must allege "facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1128.

■ Plaintiffs' Rule 10b–5, common law, and California Corporations Code fraud claims against NationsBanc suffer from the same fatal deficiency under either the PSLRA or Rule 9(b): Plaintiffs have failed to plead facts that give rise to a strong inference of scienter. Plaintiffs claim essentially three instances of fraud on the part of NationsBanc: 1) that NationsBanc knew or should have known, and concealed, that AlliedSignal provided Breed with false information regarding SRS; 2) that NationsBanc knew or should have known, and concealed, that AlliedSignal maintained control of SRS's financial records until after the Private Placement; and 3) that NationsBanc knew or should have known, and concealed, that Breed encountered difficulties during due diligence on the SRS Acquisition. None of these assertions is supported by any factual allegations other than the fact that NationsBanc acted as lead underwriter for the Private Placement. The Complaint provides no factual basis for a conclusion that NationsBanc had actual knowledge, or was reckless in not knowing, of AlliedSignal's alleged fraud; and speculative allegations that NationsBanc's own due diligence should have uncovered the fraud cannot support an inference of fraudulent intent. *Cf. In re WRT Energy Securities Litigation*, Nos. 96 Civ. 3610(JFK), 96 Civ. 3611(JFK), 1997 WL 576023, at *13 (S.D.N.Y. Sept. 15, 1997) ("the allegation that a defendant's due diligence investigation 'should have turned up the asserted improprieties in the offering materials' is insufficient to satisfy Fed.R.Civ.P. 9(b)"), *vacated on other grounds, In re WRT Energy Securities Litigation*, 75 Fed. Appx. 839, 2003 WL 22221341 (2d Cir. 2003).

■ Furthermore, Plaintiffs fail to plead adequately that NationsBanc had a motive to defraud. Allegations that NationsBanc desired to earn professional fees or to maintain its relationship to Breed do not support a strong inference of scienter. *See Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir.2001) ("a generalized motive, one which could be imputed to any publicly-owned, for-profit endeavor, is not sufficiently concrete for purposes of inferring scienter"). Plaintiffs also assert that NationsBanc had a motive in that the proceeds of the Private Placement were used in part to pay off debt to a NationsBanc affiliate. *See* Pls.' Mem. in Opp. at 66 (citing Complaint and Offering Memorandum). The Offering Memorandum also indicates. however, that Breed had negotiated a new credit facility with NationsBanc's affiliate, and that borrowings under the new facility in addition to proceeds from the Private Placement were to be used to pay off existing debt to the affiliate. *See* Offering Memorandum at 6–7. Plaintiffs in effect argue that NationsBanc wanted to participate in a transaction that included extending the relationship of its affiliate with a

company that NationsBanc knew was committing fraud. "Where [Plaintiffs'] view of the facts defies economic reason ... it does not yield a reasonable inference of fraudulent intent." *Kalnit v. Eichler*, 264 F.3d at 140–41 (internal quotation marks omitted). Accordingly, Plaintiffs have failed to plead facts that support a strong inference of scienter, and Count VI, Count XIII to the extent it asserts a claim under sections 25400 and 25500 of the California Corporations Code, and Count X of the Complaint must be dismissed with prejudice.

*Plaintiffs' Claims Against the Director Defendants*

*Plaintiffs' Federal Securities Claims against the Estate of Allen Breed are Timely*

As a threshold matter, the Court finds that Plaintiffs' Section 10(b) and Rule 10b–5, Section 15, and Section 20(a) claims against the Personal Representatives of the Estate of Allen K. Breed are timely. Each of these claims is subject to a "one year after discovery" limitations period.[6] *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (Section 10(b) and Rule 10b–5); 15 U.S.C.A. § 77m (West Supp.2004) (Sections 11 and 12(a)(2)).[7]

██ Allen K. Breed died in December of 1999. Although Plaintiffs knew of Allen

Breed's death when they timely filed their Original Complaint on July 31, 2000, the complaint named him, and not his Estate, as a defendant. *See* Orig. Compl., Ex. 2 to Clark Decl. Plaintiffs did not name the Estate as a defendant until they filed the Amended Complaint on April 9, 2002, well beyond the one-year limitations period. Consequently, Plaintiffs' claims against the Co–Personal Representatives are timely only if they "relate back" to the Original Complaint under Federal Rule of Civil Procedure 15(c). Rule 15(c) provides, in relevant part, that

> An amendment of a pleading relates back to the date of the original pleading when
>
> . . . . .
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if [the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading] and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the prop-

---

**6.** The longer limitations period established by the Sarbanes–Oxley Act of 2002, codified at 28 U.S.C.A. section 1658(b), does not apply to Plaintiffs' claims because the instant action was commenced prior to the effective date of that Act. *See* Public Company Accounting Reform and Investor Protection Act of 2002, Pub.L. No. 107–204 § 804(b) ("The limitations period provided by section 1658(b) of title 28, United States code, as added by this section, shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act."). *See also Lieberman v. Cambridge Partners, L.L.C.*, No. Civ. A. 03–2317, 2004 WL 1396750, at *2–3 (E.D.Pa. June 21, 2004) (collecting cases).

**7.** The Sections 15 and 20 control person claims are subject to the one-year limitations period applicable to the primary violations. *See Jolly v. Pittore*, 92 Civ. 3593, 1992 WL 196813, at *2 (S.D.N.Y. Aug. 5, 1992).

er party, the action would have been brought against the party.

■ The only Rule 15(c)(3) requirement in dispute here is the "mistake" provision of 15(c)(3)(B). Certainly the Estate should have known that, but for a mistake concerning the legal identity of the proper party, the Original Complaint would have asserted claims against the Estate rather than Allen Breed personally. The "mistake" criterion of Rule 15(c) "was expressly intended to preserve legitimate suits despite such mistakes of law at the pleading stage." *Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 36 (2d Cir.1996). " 'The substitution of such parties after the applicable statute of limitations may have run is not significant when the change is merely formal and in no way alters the known facts and issues on which the action is based.' " *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir.1997) (quoting *Staren v. American National Bank & Trust Co.*, 529 F.2d 1257, 1263 (7th Cir.1976)). Accordingly, the Court finds that Plaintiffs' claims against the Estate representatives relate back to the Original Complaint and are therefore timely.

*Section 11 and Section 12(a)(2) Claims Against Johnnie Cordell Breed and Speranzella Individually*

■ Plaintiffs have stated a Section 11 claim against Johnnie Cordell Breed and Speranzella. Both signed the Registration Statement and both were Breed Directors at the time the Registration Statement was filed. Therefore, each is a proper party defendant under Section 11. 15 U.S.C.A. § 77k(a)(1)-(2) (West 1997). Ac-

cordingly, the Director Defendants' motion is denied to the extent it seeks dismissal of Count I of the Complaint as against Johnnie Cordell Breed and Speranzella.

■ Plaintiffs have also stated a Section 12(a)(2) claim against Johnnie Cordell Breed and Speranzella to the extent their claim is premised on notes acquired through the Exchange Offering, but not as to notes purchased in the aftermarket.[8] "Sellers" for the purposes of Section 12(a)(2) are those that directly sell a security to a plaintiff, or those that directly solicit the plaintiff's purchase of the security. *See In re American Bank Note Holographics, Inc. Sec. Litig.*, 93 F.Supp.2d 424, 438 (S.D.N.Y.2000). Plaintiffs allege that Johnnie Cordell Breed and Speranzella helped prepare and signed the Registration Statement, and that Speranzella toured the country as part of the Road Show. Such a level of involvement is sufficient to constitute direct solicitation for the purposes of Section 12(a)(2) liability. *See id.* at 438–39; *In re Independent Energy Holdings PLC Securities Litigation*, 154 F.Supp.2d 741, 761–62 (S.D.N.Y.2001), *abrogated on other grounds, In re Initial Public Offering Securities Litigation*, 241 F.Supp.2d 281 (S.D.N.Y.2003). Consequently, the Director Defendants' motion is granted as to Count II, to the extent that Count asserts Section 12(a)(2) claims against Johnnie Cordell Breed and Speranzella in connection with securities purchased in the aftermarket.

*Claims under California Corporations Code sections 25401 and 25501*

Section 25401 of the California Corporations Code provides that

---

8. Section 12(a)(2) liability does not apply to aftermarket purchases. *Dafofin Holdings S.A. v. Hotelworks.com, Inc.*, 00 Civ. 7861(LAP), 2001 WL 940632, at *6 (S.D.N.Y. Aug. 17, 2001) ("Section 12(a)(2) liability attaches to violations of registration and disclosure obligations of an initial public offering, but not to secondary private offerings, which are not burdened by such disclosure and registration obligations.").

It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Cal. Corp.Code § 25401. Section 25501 provides a private right of action for those who buy or sell a security from a person who violates section 25401. *Id.* § 25501.

■ Plaintiffs' claims under California Corporations Code sections 25401 and 25501 fail because privity between buyer and seller is required under section 25401 and, as Plaintiffs concede, the Director Defendants were not in privity with Plaintiffs.[9] *Cf. In re ZZZZ Best Securities Litigation,* No. CV–87–3574–RSWL (BX), 1994 WL 746649 (C.D.Cal. Oct. 26, 1994). Accordingly, the Director Defendants' motion is granted in that Count XII is dismissed to the extent it asserts sections 25401 and 25501 claims against the Director Defendants.

*Section 10(b) and Rule10b–5 Claims and State Law Fraud Claims*

Plaintiffs' Rule 10b–5 claim (in Count V) against the Director Defendants must be dismissed on the same basis as their fraud claims against NationsBanc: failure to plead facts that support a strong inference of scienter. The essential defect in Plaintiffs' Rule 10b–5 claim is that Plaintiffs do not allege facts supporting an inference that the Director Defendants had actual knowledge of AlliedSignal's alleged fraud, nor do they allege facts supporting an inference that they were reckless in not knowing of, or in failing to disclose, the due diligence "difficulties" or the fact that AlliedSignal maintained SRS's books throughout the period in question. Breed and its accountant performed due diligence and presumably were sufficiently satisfied with their findings to risk an acquisition that doubled the size of the company. The "omissions" that Plaintiffs alleges, whether relating to calculations of SRS contract margins or historical financial statements, or concerning the control of SRS records, were revealed only after Breed's performance steadily declined and Breed had assumed control of SRS's records. Plaintiffs offer only conclusory allegations that Breed's due diligence should have alerted the Director Defendants to fraud, accounting or otherwise. Therefore, Plaintiffs have failed to plead facts constituting "strong circumstantial evidence of conscious misbehavior or recklessness." *Novak,* 216 F.3d at 308.

Furthermore, Plaintiffs do not allege facts sufficient to support a "motive and opportunity" showing of scienter. To plead scienter by alleging motive, Plaintiffs must allege "a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit v. Eichler,* 264 F.3d at 139. "Motive that are generally

---

9. Although Plaintiffs concede that privity is lacking, they contend that the Director Defendants are liable under California Corporations Code section 25504.1, which imposes liability on persons who materially assist violations of section 25401. *See* Pls.' Mem. at 73. Plaintiffs have not asserted such a claim in their Amended Complaint, nor have they sought leave to add one. In any event, this belated contention does not save Plaintiffs' section 25501 claims against the Director Defendants. Even if Plaintiffs had asserted such a claim it would fail because section 25504.1 imposes liability only on those who acted with intent to defraud, *see* Cal. Corp.Code § 25504.1; as explained in the Court's analysis of the fraud claims in the next section, the Complaint does not adequately allege scienter on the part of the Director Defendants.

possessed by most corporate directors and officers do not suffice." *Id.* The Second Circuit has found insufficient motives such as the desire for the corporation to appear profitable or the desire to keep stock prices high to increase officer compensation. *Id.* Plaintiffs have alleged nothing more here. Accordingly, Count V is dismissed in its entirety with prejudice.

Plaintiffs' claim under California Corporations Code sections 25400(d) and 25500 suffers from the same deficiencies as the Rule 10b–5 claim; accordingly Count XII is dismissed in its entirety with prejudice to the extent it asserts a claim under those sections.

Plaintiffs' common law fraud claim against the Director Defendants fails for substantially the same reasons as the Rule 10b–5 claim; accordingly, Count IX is also dismissed in its entirety with prejudice.

### Controlling Person Claims

 Plaintiffs assert claims against the Director Defendants under Section 15 of the Securities Act and Section 20(a) of the Exchange Act as controlling persons of Breed, based on Breed's alleged violations of the Securities Act and the Exchange Act. To state a "controlling person" claim under Section 20(a), Plaintiffs must plead 1) a primary violation by Breed; 2) that each defendant was a controlling person; and 3) that each defendant was culpable participant in the fraud. *See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F.Supp.2d 371, 413–418 (S.D.N.Y.2001). For the reasons discussed above in dismissing Plaintiffs' Section 10(b) claim against the Director Defendants, Plaintiffs have not adequately

plead a primary Section 10(b) violation by Breed. Accordingly, Count VII must be dismissed with prejudice. *See Ellison v. American Image Motor Co., Inc.,* 36 F.Supp.2d 628, 641 (S.D.N.Y.1999).

 To state a claim under Section 15, a plaintiff must plead 1) control, and 2) an underlying violation of Section 11 or Section 12(a)(2). *In re Vivendi Universal, S.A. Securities Litigation,* No. 02 Civ. 5571(HB), 2003 WL 22489764, at *22 (S.D.N.Y. Nov. 3, 2003).[10] For the reasons discussed above in analyzing Plaintiffs' Section 11 and Section 12(a)(2) claims against Johnnie Cordell Breed and Speranzella, Plaintiffs have plead primary violations of Section 11 and Section 12(a)(2) by Breed. Plaintiffs allege that Speranzella was a principal executive officer of Breed and directly participated in sale of the Bonds. Johnnie Cordell Breed, and her husband Allen Breed were controlling shareholders with over 46% of outstanding stock. Johnnie Cordell Breed and Speranzella helped to prepare and signed the Registration Statement. Accordingly, the Court finds that Plaintiffs have stated a Section 15 claim against the Director Defendants. The Director Defendants' motion is denied to the extent it seeks dismissal of Count III.

### Plaintiffs' Federal Securities Claims Against AlliedSignal

 Plaintiffs assert claims against AlliedSignal for violations of Section 11 and of Section 10(b) and Rule 10b–5, which prohibit misrepresentations or omissions in connection with the purchase or sale of securities, *Rothman v. Gregor,* 220 F.3d 81, 89 (2d Cir.2000).[11] Section 11 and Sec-

---

**10.** Although some courts in this circuit have imposed a "culpable participation" element, as in Section 20(a) claims, on Section 15 claims, this Court joins the "apparent majority of judges in the Southern District that have

determined that culpable participation is not an element of § 15." *Id.* (collecting cases).

**11.** Plaintiffs have withdrawn the California state law claims against AlliedSignal. *See* Pls.' Mem. in Opp. at 2.

tion 10(b) claims must be interposed within one year of the discovery of the untrue statement or omission.[12] "Discovery" includes constructive and inquiry notice, as well as actual notice. *Dodds v. Cigna Securities Inc.*, 12 F.3d 346, 350 (2d Cir. 1993). If Plaintiffs made no inquiry once the duty to inquire arose, knowledge of fraud is imputed as of the date the duty arose. *LC Capital Partners, LP v. Frontier Insurance Group*, 318 F.3d 148, 154 (2d Cir.2003).

■■■ Plaintiffs contend that they could not have known of AlliedSignal's fraud until Breed filed its complaint against Allied-Signal in August 1999. The Court finds that Breed's $21.7 million charge reported in its 10–K for the fiscal year ending June 30, 1998, filed September 28, 1998, and specifically attributed to losses on contracts acquired through the SRS Acquisition, and Breed's 10–Q for the quarter ending March 31, 1999 and accompanying press release, both issued May 17, 1999, reporting a special charge of $135.2 million taken because SRS businesses "are performing materially worse than expected and have contracts to provide products at losses or marginal profits," triggered the duty of a reasonable investor to inquire as to the possibility of fraud by AlliedSignal in the SRS Acquisition. Plaintiffs do not allege that they made any such inquiry. Accordingly, the Court finds that Plaintiffs' Section 11 and Section 10(b) claims against AlliedSignal are time-barred. *Cf. LC Capital Partners, LP v. Frontier Insurance Group*, 318 F.3d 148 (2d Cir.2003). AlliedSignal's motion is granted to the extent that Counts I (as against AlliedSignal) and IV are dismissed with prejudice.

*Plaintiffs' Remaining State Law Claims Against NationsBanc and AlliedSignal*

■■■ Plaintiffs have also asserted a common law fraud claim against AlliedSignal and a claim under sections 25401 and 25501 of the California Corporations Code against NationsBanc. The only federal claims remaining in this action are the Sections 11, 12(a)(2) and 15 claims against the Director Defendants. Because the parties in this action are not completely diverse, the only basis for subject matter jurisdiction of the remaining state law claims against NationsBanc and AlliedSignal would be 28 U.S.C. section 1367. Under section 1367, district courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a) (West 1993). Supplemental jurisdiction applies "where the state law claim in question arises out of the same set of facts that give rise to an anchoring federal question claim." *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir.2000). The remaining federal claims in this action arise from the Director Defendants' involvement in, or their control of Breed during the time of, the Exchange Offering. By contrast, Plaintiffs' fraud claim against AlliedSignal arises from alleged misrepresentations or omissions made by AlliedSignal in connection with the SRS Acquisition, and Plaintiffs' claim under sections 25401 and 25501 of the California Corporations Code against NationsBanc arises from NationsBanc's sale of securities in the Private Placement. There are no allegations that NationsBanc or AlliedSignal helped prepare the Registration Statement or sold

---

**12.** As noted above, at 18 n. 6, the pre-Sarbanes-Oxley limitations period applies to Plaintiffs' claims.

any of the registered securities underlying Plaintiffs' surviving federal claims against the Director Defendants. Accordingly, Plaintiffs' remaining state law claims against NationsBanc and AlliedSignal do not arise from the same set of facts that give rise to Plaintiffs' Securities Act claims against the Director Defendants, and thus do not form one case or controversy with those claims. Count VIII (against Allied-Signal) and Count XIII, to the extent it asserts a claim under sections 25401 and 25501 of the California Corporations Code against NationsBanc, are therefore dismissed pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted to the following extent: Count I is dismissed with prejudice as against AlliedSignal, NationsBanc and Prudential; Count II is dismissed with prejudice as against NationsBanc and Prudential, and as against Johnnie Cordell Breed and Speranzella to the extent it asserts Section 12(a)(2) claims in connection with securities purchased in the aftermarket; Count IV is dismissed with prejudice; Count V is dismissed with prejudice; Count VI is dismissed with prejudice; Count VII is dismissed with prejudice; Count VIII is dismissed for lack of subject matter jurisdiction; Count IX is dismissed with prejudice; Count X is dismissed with prejudice; Count XI has been withdrawn; Count XII is dismissed with prejudice; and Count XIII is dismissed with prejudice to the extent it asserts a claim under sections 25400 and 25500 of the California Corporations Code, and is dismissed for lack of subject matter jurisdiction to the extent it asserts a claim under sections 25401 and 25501 of the California Corporations Code. Defen-dants' motions are denied in all other respects.

All of Plaintiffs' claims against Defendants NationsBanc, Prudential, and Allied-Signal have thus been dismissed from this action. The surviving claims against the Director Defendants are: Count I as against Johnnie Cordell Breed and Speranzella, individually; Count II as against Johnnie Cordell Breed and Speranzella, individually, to the extent it asserts Section 12(a)(2) claims in connection with securities acquired through the Exchange Offering; and Count III as against all of the Director Defendants.

The Preliminary Pre–Trial Order dated April 10, 2002, is hereby reinstated, with a new initial pre-trial conference date of September 23, 2004, at 10:30 a.m.

SO ORDERED.