Filed 11/4/21  Engel & Engel v. Shuck CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ENGEL & ENGEL, LLP, | B297421, consolidated with B300755 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC620667) |
| THOMAS E. SHUCK et al., | |
| Defendants and Respondents. | |

APPEAL from judgment and postjudgment orders of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Judgment affirmed; postjudgment orders affirmed as modified.

Law Offices of Richard Pech, Richard Pech; Tisdale & Nicholson and Michael D. Stein for Plaintiff and Appellant.

Randall S. Waier for Defendants and Respondents Thomas E. Shuck and Parker Milliken Clark O'Hara & Samuelian APC.

Sheppard, Mullin, Richter & Hampton, Aaron J. Malo, and Karin Dougan Vogel for Defendant and Respondent Wells Fargo Equipment Finance, Inc.

\* \* \* \* \* \*

A forensic accounting firm sued its client for $92,055.54 in unpaid fees, went to arbitration, and obtained $27,100.13 for the reasonable value of its services.  The firm then sued a second entity, the entity's former lawyer, and the lawyer's law firm (collectively, the defendants) for some of the same fees it had previously told the arbitrator were the sole obligation of the first client.  The defendants raised the affirmative defense of judicial estoppel (aka the defense of inconsistent positions), and the trial court bifurcated that issue and held a three-day bench trial.  The court ruled that the firm had intentionally taken factually inconsistent positions in its sequential lawsuits, dismissed the second lawsuit, and awarded costs.  The firm appeals, arguing that the trial court's evidentiary and procedural rulings denied it due process, that the court erred in applying judicial estoppel, and that the cost awards are too high.  We conclude there was no error in the judgment for the defendants, but that the trial court erred in awarding one of the defendants $5,056.61 in unallowable costs.  We accordingly affirm the judgment, and affirm the costs awards with the modifications discussed in this opinion.

2

## FACTS AND PROCEDURAL BACKGROUND

I.   **Facts**

   A.   ***The precursor lawsuit where plaintiff is hired***

Two persons solicited investments in a surgical building in Newport Beach from John and Judith DeLong (the DeLongs), from Leona Horowitz (Horowitz), and from Wells Fargo Equipment Finance, Inc. (Wells Fargo). When the solicitors did not deliver what was promised, the DeLongs, Horowitz, and Wells Fargo sued the solicitors in separate lawsuits for the misuse of their funds.

In the spring of 2014, Engel & Engel, LLP (plaintiff) was retained to do forensic accounting in support of one or more of these pending lawsuits. One of its partners is Jason Engel (Engel). Initially, the DeLongs, Horowitz, and Wells Fargo discussed a pooling arrangement under which the three would split the cost of plaintiff's services. Ultimately, however, only the DeLongs and Horowitz signed retainer agreements with plaintiff.

Plaintiff worked on the pending lawsuits in May, June, and July of 2014, and billed over $110,000 in fees for those months. Pursuant to what it believed to be the pooling agreement, plaintiff allocated some of its fees each month to the DeLongs, Horowitz, and Wells Fargo.

Horowitz paid plaintiff the amount plaintiff had allocated to her.

   B.   ***Plaintiff's lawsuit against the DeLongs***

In 2014, plaintiff sued the DeLongs for breach of contract, quantum meruit, and fraud. Plaintiff then moved to compel arbitration.

The arbitration took place over four days in 2015 and 2016.

3

During the arbitration, plaintiff offered two internally inconsistent theories about the amount the DeLongs owed. At some points, plaintiff argued that the DeLongs owed it $92,055.43—which was the amount Engel had allocated to the DeLongs for May, June, and July 2014—plus interest. At other points, Engel testified that "I am not working for [Wells Fargo]. I'm not working for [Horowitz]. I am only working on [the DeLong] case, and the billing for [the DeLong] case . . . was going to be divided up somehow" but that was just "what you [three] . . . had agreed to," and plaintiff argued in closing, "Why would Wells Fargo and Horowitz agree to pay 2/3 of [plaintiff's] fees limited in scope to tracing [the] DeLong's . . . investment?"; this testimony and argument suggests that the DeLongs owed plaintiff the *entire* unpaid amount of $105,339.92 plus interest. Under plaintiff's first theory, plaintiff suggested Wells Fargo might owe $13,284.49 plus interest (which came to $16,909.49); under its second, Wells Fargo owed nothing.

The arbitrator ruled that the DeLongs were responsible for paying plaintiff for the reasonable value of its services under a quantum meruit theory, and awarded $27,100.13 as the value of services; with attorney fees and costs, the total arbitration award came to $75,949.02. At plaintiff's request, the Superior Court confirmed the award.

## II. Procedural Background

In May 2016, plaintiff sued Wells Fargo; Thomas E. Shuck (Shuck), the lawyer that represented Wells Fargo in its lawsuit against the solicitors in 2014; and Parker Milliken Clark O'Hara & Samuelian, APC (the law firm), the firm where Shuck worked at the time (collectively, defendants). On the basis of an alleged oral agreement between Engel and Shuck, plaintiff asserted

4

claims against defendants for (1) intentional misrepresentation, (2) false promise, (3) negligent misrepresentation, (4) quantum meruit, and (5) promissory estoppel. Plaintiff alleged that defendants were liable for $37,571.32 of plaintiff's services in May, June, and July 2014, for an additional amount greater than $100,000 for other unspecific general damages, and for punitive damages.

In their answers, defendants asserted the affirmative defense of judicial estoppel—namely, that plaintiff was seeking to recover fees that it had previously taken the position were owed by the DeLongs.[1]

Defendants then moved for summary adjudication. The trial court granted summary adjudication of plaintiff's quantum meruit claim after finding that none of plaintiff's services from May, June, or July 2014 were for Wells Fargo's benefit because Engel had testified at the arbitration that "[plaintiff's] services for May and June 2014 were out of an obligation to Horowitz" and its services "in July w[ere] only for the DeLongs." The court denied summary adjudication of plaintiff's remaining claims.

Because it would be "cleaner" and "best in terms of efficiency," the trial court bifurcated the further proceedings: the court would first conduct a bench trial on the affirmative defense of judicial estoppel, and, if necessary, a jury trial on plaintiff's

---

[1] Defendants also raised the affirmative defense of waiver, but the trial court ultimately rejected that defense and defendants do not cross-appeal that ruling.

5

remaining claims for intentional misrepresentation, fraud, and negligent misrepresentation.[2]

At the conclusion of a three-day court trial, the court issued a statement of decision concluding that "judicial estoppel applies" because plaintiff, in the prior arbitration, "intentionally" took the position that *the DeLongs* "are responsible for all of the fees incurred between May and July 2014" and was now taking the inconsistent position that *defendants* "are responsible for those same fees." Because it would be "'patently wrong'" to allow plaintiff to change its position on the factual issue at the very heart of the pending lawsuit (namely, who owed plaintiff its fees), the court dismissed plaintiff's remaining claims.

Shuck and the law firm filed a memorandum of costs, and Wells Fargo filed a separate memorandum. Plaintiff filed motions to tax as to each. Following a full round of briefing, the trial court partially granted and partially denied one of plaintiff's motions to tax, awarding $12,375.90 in costs to Shuck and the law firm, and denied the other outright, awarding $18,496.61 in costs to Wells Fargo.

Plaintiff filed timely notices of appeal from the judgment as well as the cost orders.

## DISCUSSION

### I. Judicial Estoppel, Defined

The doctrine of judicial estoppel, which is sometimes referred to as the "'doctrine of ""preclusion of inconsistent positions,""''" is designed to prevent litigants from """"gaining an advantage by taking one position [in litigation], and then seeking a second advantage by taking an incompatible position."""" (*MW*

---

[2] By this time, plaintiff had voluntarily dismissed its promissory estoppel claim.

6

*Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 422 (*MW Erectors*); *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 448 (*Minish*)). Preventing litigants from "playing 'fast and loose with the courts'" in this fashion, in turn, serves "'to protect parties from opponents' unfair strategies'" and, more importantly, to "'maintain the integrity of the judicial system.'" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986 (*Aguilar*); *Minish*, at p. 449).

Before the doctrine *can* be invoked, a court must find five "necessary elements"—namely, that "'(1) the same party [or its attorney] has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*MW Erectors*, *supra*, 36 Cal.4th at p. 422, quoting *Aguilar*, *supra*, 32 Cal.4th at pp. 986-987; *Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 48 (*Blix*) ["Judicial estoppel may be based on a position taken by a party or party's legal counsel"]; accord, *Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 599 [positions must be "intentional"] (*Kelsey*).) Because it "is an equitable doctrine," however, whether judicial estoppel *will* be invoked "is discretionary." (*MW Erectors*, at p. 422, italics omitted; *People ex rel. Sneddon v. Torch Energy Services, Inc.* (2002) 102 Cal.App.4th 181, 189 (*Torch Energy*).) Because invocation of the doctrine can "produce harsh consequences," it is to be "applied with caution and limited to egregious circumstances." (*Minish*, *supra*, 214 Cal.App.4th at p. 449; *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 132 (*Gottlieb*).)

**II.    Challenges to Judicial Estoppel Ruling**

    **A.    *Evidentiary and procedural challenges***

    Plaintiff argues that the trial court violated due process by (1) excluding all evidence aimed at "correcting" or "explaining" the position it took in the prior arbitration, and (2) requiring it to designate for the court *during the evidentiary portion of the bifurcated trial* any portions of the transcripts from the four-day arbitration that it wished to rely on.  Although we review constitutional questions de novo (*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 609-610), we review a trial court's evidentiary rulings and the exercise of its statutory or inherent authority to regulate trial procedure for an abuse of discretion (*People v. Flores* (2020) 9 Cal.5th 371, 409 [evidentiary rulings]; *Schimmel v. Levin* (2011) 195 Cal.App.4th 81, 87 (*Schimmel*) [regulation of proceedings]).

    1.    *Scope of relevant evidence*

    Plaintiff contends that the trial court violated its due process rights by (1) precluding plaintiff from allowing two of its witnesses—namely, Engel and the lawyer who represented plaintiff during the DeLong arbitration—to offer testimony to "correct" or "explain" the testimony and argument plaintiff made during the arbitration,[3] and (2) excluding from evidence several exhibits from the arbitration.

---

[3]    In its briefs on appeal, plaintiff also argues that the trial court (1) entirely precluded testimony from three witnesses—namely, (a) Engel, (b) plaintiff's lawyer in the prior arbitration, and (c) the lawyer who represented the DeLongs in the arbitration; and (2) "effectively" granted two of defendants' motions in limine—namely, (a) a motion to preclude any evidence inconsistent with the trial court's summary adjudication ruling, and (b) a motion to preclude the DeLongs' lawyer from testifying.

Throughout the bifurcated proceeding on the judicial estoppel affirmative defense, the trial court ruled that plaintiff could not offer new evidence to contradict or explain the position it had taken in the prior arbitration, reasoning that "the positions taken are the positions taken" and that evidence aimed at explaining or contradicting those positions was "improper in light of the issues we're dealing with." The court was nevertheless careful to emphasize that plaintiff *could* introduce evidence from the prior arbitration proceeding that would put any evidence offered by the defendants from that proceeding in its proper context.

This was a ruling based on relevance, and the trial court did not abuse its discretion in so ruling. The court's evidentiary ruling occurred during the first portion of the bifurcated trial where the chief issue was the affirmative defense of judicial estoppel. Bifurcating the trial to adjudicate this issue first was legally appropriate (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 911 [whether to bifurcate matter is within the trial court's discretion]; see generally, Code Civ Proc., §§ 597, 598), and plaintiff does not assert otherwise on appeal. Critically, this bifurcation narrowed the scope of issues—and concomitantly narrowed the definition of relevant evidence to evidence bearing on those issues. (E.g.,

---

These additional arguments collapse back into plaintiff's general challenge to the scope of evidence. That is because plaintiff was permitted to call two of the three witnesses (namely, Engel and plaintiff's lawyer from the arbitration), and the third (the DeLongs' lawyer) did not testify because the trial court held plaintiff to its midtrial representation that it would not be calling him as a witness. That is also because the trial court never ruled on the motions in limine.

9

*People v. Mills* (2012) 55 Cal.4th 663, 672 [when sanity is bifurcated from guilt, "sanity is irrelevant at the guilt phase and evidence tending to prove insanity . . . is inadmissible," italics omitted]; *Estate of Ivey* (1994) 22 Cal.App.4th 873, 880 [same, as to certain evidence in the damages and liability phases of bifurcated civil trial].)  Indeed, this is one of the "major objective[s]" of bifurcation.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 888 ["The major objective of bifurcated trials is to expedite and simplify the presentation of evidence"].)  Because the propriety of applying judicial estoppel was the sole issue of the bifurcated trial, the only evidence that was relevant was evidence bearing on the factual elements of that doctrine— namely, what plaintiff's position was during the arbitration (and whether that position was taken "intentionally") and what plaintiff's position is in this case.  (*MW Erectors*, *supra*, 36 Cal.4th at p. 422.)  The former element turns on what plaintiff— through Engel and plaintiff's lawyer—*said* in the prior arbitration proceeding.  Any evidence offered by plaintiff to "correct" or "explain" its prior position was irrelevant because the doctrine of judicial estoppel would cease to exist if parties could later "correct" what they said and because "why" they said what they said is irrelevant.  Because the evidence plaintiff sought to introduce was not admissible under the general rules governing relevance (Evid. Code, §§ 350, 210), the trial court's exclusion of this evidence did not violate due process.  (*People v. Anderson* (2012) 208 Cal.App.4th 851, 880 ["Application of ordinary rules of evidence "'. . . does not impair a[ litigant]'s due process right to present a defense"'"]; accord, *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291 ["Unquestionably, the trial court has

the power to . . . exclude proffered evidence that is deemed to be irrelevant"].)

Plaintiff resists this conclusion with two categories of arguments.

First, plaintiff asserts that a person defending against a claim of judicial estoppel has a right, under existing case law, to introduce evidence aimed at (1) changing its prior position, and (2) "clarifying" its prior position. As support for the first proposition, plaintiff cites *Milton v. Montegomery Ward & Co., Inc.* (1973) 33 Cal.App.3d 133 (*Milton*), *Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133 (*Ahn*), and *Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343 (*Wolf*). As support for the second, plaintiff cites *Levin v. Ligon* (2006) 140 Cal.App.4th 1456 (*Levin*), *California Amplifier, Inc. v. RLI Ins. Co.* (2001) 94 Cal.App.4th 102 (*California Amplifier*), and *Koo v. Rubio's Restaurants, Inc.* (2003) 109 Cal.App.4th 719 (*Koo*).

We reject this assertion for two reasons. To begin, the cases plaintiff cites do not support its assertion. *Milton*, *Ahn*, and *Wolf* dealt with a litigant's right to introduce evidence at trial to contradict its prior discovery responses (in *Milton* and *Ahn*) or to contradict its understanding of the terms of a contract (in *Wolf*); in all three cases, the issue at trial was whether to believe the truth of what was said prior to trial or what was said (or, in *Wolf*, offered as the written contract) at trial. (*Milton, supra*, 33 Cal.App.3d at pp. 137-138; *Ahn, supra*, 223 Cal.App.4th at pp. 135-136, 144, 147; *Wolf, supra*, 114 Cal.App.4th at pp. 1350-1351.) Judicial estoppel, by contrast, is not concerned with which of the litigant's positions—its prior position or its current position—is true; what matters to judicial estoppel is that the litigant *took* the prior position (and prevailed on it). *Levin* and

11

*California Amplifier* are inapt because they give a litigant defending against a judicial estoppel defense the right to introduce evidence of the "legal context" of their prior position; indeed, those cases go on to specify that the litigant may *not* introduce "factual statement[s]" to *contradict* that position. (*Levin, supra,* 140 Cal.App.4th at p. 1473; *California Amplifier, supra,* 94 Cal.App.4th at pp. 117-118.) *Koo* allowed a party to introduce evidence to "clarify[]" its prior position when that position was murky (*Koo, supra,* 109 Cal.App.4th at pp. 735-736); the limited leeway *Koo* confers is not at issue here because plaintiff's position at the DeLong arbitration regarding who owed it money was as clear as crystal. More to the point, allowing a party to introduce evidence to change, explain, or clarify its prior position would be inimical to the very purpose of—and, indeed, would strike the death blow to—the doctrine of judicial estoppel: As noted above, the purpose of the doctrine is to prevent a litigant who succeeded in Lawsuit No. 1 by asserting Fact "X" from succeeding in Lawsuit No. 2 by asserting Fact "Not X." If, as plaintiff suggests, the litigant in Lawsuit No. 2 can offer evidence that "In Lawsuit No. 1, I *really* meant Fact "*Not X*"," then that litigant would be able to do precisely what the doctrine of judicial estoppel is meant to foreclose—that is, to secure two legal victories on the basis of inconsistent positions. That might work for Schrodinger's cat, but that is not how it works in a court of law.

Second, plaintiff contends that the trial court erred in (1) treating Engel's testimony and plaintiff's closing arguments from the arbitration—and plaintiff's discovery responses in this case admitting to their authenticity—as "judicial admissions" that precluded any contradictory evidence, and (2) admitting Engel's

12

prior testimony from the arbitration without satisfying the "former testimony" exception to the hearsay rule. We reject these contentions. We need not decide whether the parties' and the trial court's characterization of statements from the prior arbitration as being "judicial admissions" is correct or incorrect. Either way, evidence to contradict those prior statements is not relevant for the reasons explained above. The former testimony exception is likewise irrelevant. It is an exception to the hearsay rule and thus applies only when the former testimony is being admitted for its truth (Evid. Code, §§ 1290-1292); as noted above, however, plaintiff's statements during the arbitration were admitted solely to prove what its position was during that arbitration—and for this purpose, it does not matter whether those statements were true. (*People v. Contreras* (1962) 201 Cal.App.2d 854, 857 [statements admitted "to prove what was said rather than the truth of what was said" are not "hearsay"]; see generally, Evid. Code, § 1200.) Because they were not admitted for their truth, they were not hearsay and there is no need to satisfy any exception to the hearsay rule.

> 2. *Procedures for designating pertinent excerpts*

Plaintiff asserts that the trial court violated its due process rights by (1) requiring the parties to designate the pertinent passages from the four-day arbitration transcripts as part of their evidentiary presentation, and (2) ambushing plaintiff with this procedure after it had rested its evidentiary presentation.

We start with the second argument, and reject it because it is flatly contradicted by the record. The trial court explicitly told the parties *during opening statements* to specify "what portions of the transcript [they would] like the court to consider" "during the evidentiary portion" of the case and "before . . . closing

13

[arguments]." The court later explained its twin rationales for the designation procedure—namely, that it (1) ensured that each party could designate additional portions in response to its opponent's designations while the evidentiary portion of the trial was still ongoing (whereas it would be too late to cross-designate if designations occurred for the first time during closing arguments), and (2) saved the court the time of hunting through the haystack of the voluminous transcripts looking for needles the parties neglected to point out. What is more, the court reminded the parties of its designation procedure no fewer than six more times during the trial.

We also reject plaintiff's first argument that the trial court lacked the authority to implement its designation procedure, and do so for two reasons. To begin, plaintiff has forfeited its right to object to the procedure by initially acceding to the procedure during trial; by subsequently labeling the procedure "nonsensical," declaring an intent not to comply, and refusing to designate any portions during the evidentiary portion of the trial; and, after the close of evidence, by announcing a belated intention to comply by seeking to designate portions of the transcripts during its closing arguments and by asking the court to reopen the evidentiary portion of the trial (which the court declined to do). (E.g., *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328 ["The forfeiture rule exists . . . to thwart game-playing litigants"].) Even if we overlook any forfeiture, trial courts have the discretion to "regulate the order of proof" (Evid. Code, § 320) as well as the power to "provide for the orderly conduct of proceedings before it" (Code Civ. Proc., § 128, subd. (a)(3)). Trial courts also have "'the inherent power, in furtherance of justice, to regulate the proceedings of a trial before

14

it; to effect an orderly disposition of the issues presented; and to control the conduct of all persons in any manner connected therewith.'" (*Schimmel*, *supra*, 195 Cal.App.4th at p. 87.) Together, this statutory and inherent authority empowers trial courts to delineate procedures that facilitate the parties' presentation of evidence. (*Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, 1376-1379; *Rosenfeld, Meyer & Susman v. Cohen* (1987) 191 Cal.App.3d 1035, 1052 & fn. 7.) The trial court's designation procedure in this case falls comfortably within this broad authority. Plaintiff's chief response is that one of the standard civil jury instructions (CACI No. 5000) tells jurors that "[they] must consider *all* the evidence"; that the trial court had admitted into evidence the full transcripts from the arbitration; and that the trial court was accordingly obligated to consider plaintiff's designations no matter when they were made (and, indeed, was obligated to sift through the four days' worth of transcripts looking for passages that might support plaintiff's case). We reject this response, as we do not agree that a general instruction directing jurors to consider all evidence somehow divests trial courts of their statutory and inherent authority to reasonably regulate trial proceedings. (Cf. *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 ["'trial judges have no authority to issue courtroom local rules which conflict with any statute' or are 'inconsistent with law'"].)

**B.** ***Challenge to the merits of judicial estoppel ruling***

Plaintiff argues that the trial court erred in dismissing its claims under the doctrine of judicial estoppel. We independently review whether the "necessary elements" of judicial estoppel exist, but review a trial court's subsidiary factual findings

15

regarding those elements for substantial evidence. (*Blix*, *supra*, 191 Cal.App.4th at p. 46.) We review a trial court's subsequent exercise of equitable discretion to apply the doctrine for an abuse of discretion. (*Id.* at pp. 46-47.) Substantial evidence review is limited to whether the record, when viewed in the light most favorable to the ruling below, contains evidence of "'ponderable legal significance, reasonable in nature, credible, and of solid value'" sufficient to permit a reasonable trier of fact to come to the same ruling. (*Id.* at p. 47; *Flores v. Liu* (2021) 60 Cal.App.5th 278, 296.)

We independently conclude that the trial court's factual findings are supported by substantial evidence, and that defendants carried their burden of proving the necessary elements of judicial estoppel. Substantial evidence supports the trial court's finding that plaintiff took two "totally inconsistent" positions in the DeLong arbitration and in this case (and thus satisfied the first and fourth elements). In the DeLong arbitration, plaintiff offered evidence and argument in support of its position that the DeLongs were *either* solely liable for all of plaintiff's services in May, June, and July of 2014, *or* for $92,055.43 of those services; reciprocally, this meant that Wells Fargo (and, by extension, the other defendants) was liable *either* for none of plaintiff's services in May, June, and July of 2014, *or* for at most $13,284.29 plus interest. Now, in this case, plaintiff is taking the position that Wells Fargo (and, by extension, the other defendants) is solely liable for *at least* $37,571.32 (and, depending on what plaintiff means by the request for $100,000 of "general damages," potentially all) of plaintiff's services for the same three months in 2014. Plaintiff's prior position that *the DeLongs* were solely liable for all of plaintiff's services or liable

16

for all but $13,284.29 of its services is impossible to reconcile with its current position that *Wells Fargo* is solely liable for $37,571.32 (or potentially all) of the same services. Because plaintiff's former position "'necessarily excludes'" its current position, plaintiff's two positions are "mutually exclusive" and hence "inconsistent" for purposes of judicial estoppel. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 182 (*Jackson*); *Bell v. Wells Fargo Bank, N.A.* (1998) 62 Cal.App.4th 1382, 1388.) Substantial evidence supports the trial court's finding that plaintiff *intentionally* (rather than mistakenly) took its position in the DeLong arbitration (and thus satisfied the fifth element) because that position was *the* necessary premise to succeed on its claims in arbitration; contrary to what plaintiff suggests, a further showing of "bad faith" or "evil motive" is not required. (*Haley v. Dow Lewis Motors, Inc.* (1999) 72 Cal.App.4th 497, 509-510 ["intentional self-contradiction" is required]; *International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 354 ["evil motive" not required]; cf. *Kelsey*, *supra*, 76 Cal.App.4th at pp. 598-599 [a party's position is less likely to be intentional when it is established by omission rather than affirmative statements].) The two positions were taken in judicial or quasi-judicial proceedings (thus satisfying the second element) because both the DeLong arbitration and this litigation so qualify. (*Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187-189; cf. *Torch Energy*, *supra*, 102 Cal.App.4th at p. 189 [prior inconsistent position need not be made to a court of law].) And plaintiff succeeded in asserting its position in the DeLong arbitration because the arbitrator found the DeLongs liable for the services plaintiff provided even if the arbitrator fixed a value for those services at less than plaintiff requested. (See *Levin*, *supra*, 140 Cal.App.4th

17

at pp. 1477-1478 [party "succeeds" in litigation even if it settles for less than the amount initially sought].)

The trial court also did not abuse its discretion in exercising its equitable discretion to apply the doctrine and dismiss plaintiff's claims. Plaintiff's conduct in suing the DeLongs on the premise that they were solely responsible for its fees and, after obtaining a judgment less than it wanted, suing defendants on the premise that *they* were solely responsible for all or part of the same fees lies deep in the heartland of the type of conduct the judicial estoppel doctrine was meant to preclude. (Accord, *Jackson*, *supra*, 60 Cal.App.4th at p. 181 ["judicial estoppel is especially appropriate where a party has taken inconsistent positions in separate proceedings"].) The trial court did not abuse its discretion in so recognizing.

Plaintiff responds with a variety of arguments that we can drop into three buckets.[4]

First, plaintiff argues that the "inconsistency" element of judicial estoppel is lacking, and proffers three reasons why its position in the DeLong arbitration was *not* inconsistent with its position in this case. To begin, plaintiff asserts that it never argued that the DeLongs were *exclusively* liable for the fees

_____

[4]     Plaintiff also asserts that defendants cannot assert judicial estoppel because they were not parties to the DeLong litigation, but this assertion is frivolous. Although the doctrines of judicial estoppel and collateral estoppel both have the word "estoppel" in their names, they are different doctrines with different requirements, and it is well settled that privity of parties is required for collateral estoppel but *not* for judicial estoppel. (*Jackson, supra,* 60 Cal.App.4th at pp. 182-182 ["The gravamen of judicial estoppel is not privity"]; *Gottlieb, supra,* 141 Cal.App.4th at pp. 131-132.)

incurred in May, June, and July 2014; instead, plaintiff continues, it was suing the DeLongs because they, along with Horowitz and Wells Fargo, were jointly and severally liable for those fees. This assertion mischaracterizes plaintiff's position during the DeLong arbitration, where plaintiff never uttered the words "joint and several liability" and where plaintiff instead divided the outstanding fees between the DeLongs and Wells Fargo—a division that makes no sense if plaintiff's position were that they were jointly and severally liable for the entire amount. Next, plaintiff marshals the evidence from the DeLong arbitration and asserts that, based on that evidence, the arbitrator *could* have found Wells Fargo to be jointly and severally liable. This is irrelevant to the doctrine of judicial estoppel, which turns on the position *plaintiff* took rather than what might have happened if the tribunal rejected that position. Lastly, plaintiff asserts that there can be no inconsistency because plaintiff took no prior position on whether Wells Fargo engaged in any fraud or made any misrepresentations. This ignores that plaintiff's central theory in the DeLong arbitration was that Engel performed all or most of his services—and the DeLongs incurred fees due to plaintiff—*for the DeLongs*, and that plaintiff's central theory now is that Engel performed those same services *for Wells Fargo*; it is *that* inconsistency that satisfies this necessary element of judicial estoppel.

Second, plaintiff argues that the trial court abused its equitable discretion in electing to apply judicial estoppel in this case because (1) the circumstances in this case are not "'egregious'" (*Minish*, *supra*, 214 Cal.App.4th at p. 449), and (2) defendants had "unclean hands" (and are thus barred from invoking an equity-based affirmative defense) because Shuck was

19

not clear in his arrangement with Engel and because the DeLongs' lawyer engaged in "nefarious" conduct by agreeing to represent Shuck and the law firm in this case. As explained above, plaintiff's conduct in this case lies near the heartland of the type of conduct the doctrine of judicial estoppel was designed to preclude; a trial court could reasonably conclude that plaintiff's seriatim lawsuits based on inconsistent factual premises was "egregious." Plaintiff has waived any right to invoke the "unclean hands" defense by waiting until its reply brief on appeal to raise it. (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 526, fn. 8 (*Tyler*) ["it is unfair to raise new arguments for the first time in a reply brief"].) At oral argument, plaintiff suggested that this defense is not waived because, in its opening brief on appeal, it cited portions of the record that supported the unclean hands argument it chose not to articulate in that brief; this is insufficient to preserve the issue. Further, we question its relevance here, where the allegedly inequitable behavior occurred between plaintiff *and defendants*, while the doctrine of judicial estoppel concerns the behavior between plaintiff *and the judicial system*.

Third, plaintiff argues that the trial court's invocation of judicial estoppel cannot be reconciled with its denial of summary judgment on plaintiff's fraud-related claims. Plaintiff has waived this argument by waiting until its reply brief to raise it. (*Tyler*, *supra*, 29 Cal.App.4th at p. 526, fn. 8.) The court's rulings are internally consistent in any event. The court denied summary adjudication on plaintiff's fraud-related claims because there were "triable issue[s] of fact as to whether [p]laintiff relied upon the representations made by Shuck to its detriment." The elements of judicial estoppel are entirely divorced from the

20

elements of plaintiff's underlying fraud-related claims, which is why the trial court bifurcated the proceedings in the first place. Thus, the trial court's summary adjudication ruling for plaintiff regarding the latter does not preclude a ruling for defendants on the former.

## III.  Challenges to Cost Awards

Plaintiff challenges the trial court's orders regarding the award of costs.  Specifically, plaintiff argues that the court erred in awarding defendants (1) certain costs for transcripts not ordered by the court, and (2) certain costs for trial support services.  We review a trial court's award of costs for abuse of discretion.  (*Hooked Media Group, Inc. v. Apple, Inc.* (2020) 55 Cal.App.5th 323, 338 (*Hooked Media*); *LAOSD Asbestos Cases* (2018) 25 Cal.App.5th 1116, 1123.)  We review any subsidiary legal questions (such as whether a cost item is statutorily authorized) de novo (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576; *Baker-Hoey v. Lockheed Martin Corp.* (2003) 111 Cal.App.4th 592, 597 (*Baker Hoey*)), and any subsidiary factual findings (such as whether a cost is reasonably necessary and reasonable in amount) for substantial evidence (*Chaaban v. Wet Seal, Inc.* (2012) 203 Cal.App.4th 49, 52 (*Chaaban*)).

### A.  *Pertinent law*

A prevailing party is entitled to recover certain costs "as a matter of right."  (Code Civ. Proc., § 1032.)  The statutes governing the award of costs create three categories of costs:  (1) those specifically enumerated as "allowable" (*id.*, § 1033.5, subd. (a)); (2) those specifically enumerated as "not allowable . . . except when expressly authorized by law" (*id.*, subd. (b)); and (3) those

21

"not mentioned" in the statutes, which are recoverable "in the court's discretion" (*id.*, subd. (c)(4)). (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 71.) Any costs awarded must be "reasonably necessary to the conduct of the litigation" and "reasonable in amount." (Code Civ. Proc., § 1033.5, subds. (c)(2) & (3).)

Courts employ a burden-shifting analysis. The prevailing party bears the initial burden of establishing prima facie entitlement to recovery of costs, which it meets if its verified cost bill "'appears proper on its face.'" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 855 (*Benach*); *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 774 (*Ladas*).) The nonprevailing party then bears the burden of making a "proper[] object[ion]" to specific costs in a motion to tax. (*Jones v. Dumrichob* (1998) 63 Cal.App.4th 1258, 1265 (*Jones*)). If the nonprevailing party makes a proper objection, the burden shifts back to the prevailing party to submit documentation in support of those costs. (*Ibid.*)

**B.    *Analysis***

> 1.    *Challenges to costs sought by Wells Fargo*
>> a.    Transcript costs

Plaintiff argues that the trial court erred in awarding Wells Fargo $5,056.61 in transcript costs (which it listed as part of the $6,431.60 it sought as "court reporter fees") that are not recoverable. Plaintiff is correct. The documentation Wells Fargo provided in support of four cost items—in the amounts of $540, $667, $748, and $3,101.10—were for "transcripts of proceedings," including charges for "key word indexing" and "processing" associated with the transcripts. Because "[t]ranscripts of court proceedings" are not recoverable unless "ordered by the court"

22

(Code Civ. Proc., § 1033.5, subd. (a)(9); cf. *id.* subd. (b)(5) [prohibiting recovery for those "not ordered by the court"]), and because it is undisputed that the court did not order these transcripts, the court erred in awarding the cost to prepare them as costs.

Wells Fargo resists this outcome with two arguments. First, it argues that plaintiff did not make a "proper objection," such that Wells Fargo never had the burden to justify those transcript costs. We reject this argument because Wells Fargo *did* respond with the pertinent documentation, and that documentation establishes that it is not entitled to those costs. Second, Wells Fargo argues that the transcripts not ordered by the trial court in this case are nevertheless recoverable as "court reporter fees" specifically allowable under the cost statutes; for support, it cites Government Code section 68086, subdivision (d). We reject this argument as well. We cannot treat transcript costs as court reporter fees because the cost statutes treat them as distinct costs. (Compare Code Civ. Proc., § 1033.5, subd. (a)(11) ["court reporter fees" are allowable] with *id.*, subds. (a)(9) & (b)(5) ["transcripts" are allowable only if ordered by the court]; see *Yao v. Superior Court* (2002) 104 Cal.App.4th 327, 333 ["Where the Legislature makes express statutory distinctions, we must presume it did so deliberately, giving effect to the distinctions"].)

b.      Models, enlargements, and photocopies

Plaintiff contends that the trial court erred in awarding Wells Fargo five days' worth of costs for copying and for the electronic presentation of exhibits. Costs for "[m]odels" and "enlargements," "photocopies," and "electronic presentation" of exhibits, including the cost of "rental equipment and electronic formatting," are specifically allowable "if they were reasonably

23

helpful to aid the trier of fact." (Code Civ. Proc., § 1033.5, subd. (a)(13).) Because the trial court explicitly found the "electronic presentation . . . extremely and reasonably helpful to the [c]ourt at trial," the trial court properly awarded these costs.

Plaintiff offers three arguments against this conclusion. First, plaintiff urges that the court erred in awarding *five* days' worth of costs for a trial that lasted only *three* days. This argument overlooks that Wells Fargo showed up on two prior dates when trial was set to begin, but the trial had to be continued twice due to what the court characterized as plaintiff's "shenanigans" (namely, making voluminous filings raising new issues on the eve of those trial dates). When this context is considered, the court did not err in concluding that Wells Fargo was entitled to its electronic presentation costs for all five days— that is, the two prior abortive start days *and* the three days of trial. Second, plaintiff reports that the trial court had a printed-out exhibit binder, such that Wells Fargo's electronic presentation was not really necessary or helpful. The trial court expressly found that it was, and we decline plaintiff's invitation to second guess the trial court's opinion of whether it found the electronic presentation helpful. Lastly, plaintiff argues that the trial court's failure to specifically address its objection to this cost in its cost order somehow invalidates the award of this cost. It does not. (See, e.g., *Rojas v. Mitchell* (1996) 50 Cal.App.4th 1445, 1450 [failure to make a finding on an issue that is supported by substantial evidence is harmless when it may reasonably be inferred from other findings].)

2.      *Challenges to costs sought by Shuck and the law firm*

a.      Transcript costs

Plaintiff argues that a charge of $1,972 for transcripts from the DeLong arbitration was improper as a nonallowable "transcript[] of court proceedings."  Because the transcripts from the DeLong arbitration were not "transcripts of *court* proceedings," they do not fall under the rule rendering them recoverable as costs only if "ordered by the court."  Instead, such costs are "not mentioned" in the cost statutes, and hence within the court's discretion (Code Civ. Proc., § 1033.5, subd. (c)(4)).  Given the centrality of the DeLong arbitration transcript to the bifurcation portion of the trial dedicated to the question of judicial estoppel, the trial court acted well within its discretion in awarding this cost.  Plaintiff urges that it should prevail because the court did not specifically address its objection on this ground; as noted above, this does not provide a basis for overturning what is otherwise a proper cost award.

b.      Models, enlargements, and photocopies

Plaintiff argues that the trial court erred in awarding Shuck and the law firm a $2,500 "consulting fee" charged by their trial support vendor.  Because Shuck and the law firm submitted documentation showing that this cost was incurred, because the trial support vendor's services were part of the "electronic presentation" of exhibits, and because the court found that presentation to be "extremely and reasonably helpful," this cost was properly awarded.  (Code Civ. Proc., § 1033.5, subd. (a)(13).)  Plaintiff makes two arguments in response.  First, it argues that Shuck and the law firm never proved that they *paid* this invoice.  This is irrelevant because "[c]osts are allowable if incurred,

25

whether or not paid."  (Code Civ. Proc., § 1033.5, subd. (c)(1); *Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 694-695.)  Second, plaintiff points to evidence indicating that Shuck and the law firm split the electronic presentation costs evenly, and that Wells Fargo's cost memo did not seek any amount corresponding with Shuck's and the law firm's request for this $2,500.  Although this could be viewed as Shuck and the law firm seeking costs that were not legitimately incurred, it could also be the case that Wells Fargo simply opted not to seek reimbursement of its portion of that cost.  Where, as here, the evidence can reasonably be viewed in one of two ways, we must accept the view that supports the trial court's finding. (*Kao v. Holiday* (2020) 58 Cal.App.5th 199, 206; *Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292 ["'our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below'"].)

## DISPOSITION

The judgment is affirmed.  The cost award to Shuck and the law firm is affirmed, and the cost award to Wells Fargo is affirmed as modified in conformity with this opinion to strike $5,065.61.  Shuck and the law firm are entitled to their costs on appeal; plaintiff and Wells Fargo are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
ASHMANN-GERST

27